[No. 13912. In Bank. — November 27, 1891.]

W. G. BURKE, ADMINISTRATOR, ETC., APPELLANT, *v.*
B. W. BOURS ET AL., RESPONDENTS.

AGENCY — SALE OF LAND — PURCHASE BY AGENT — IGNORANCE OF PRINCIPAL — OPTION. — An agent or subagent employed to assist in the consummation of a sale of land is incapable of purchasing the property from himself without the knowledge of the principal, and such a purchase will always be set aside, at the option of the principal.

ID. — INJURY TO PRINCIPAL NOT MATERIAL — OBJECT OF RULE. — The amount of the consideration, the absence of fraud or undue advantage or injury to the principal, and other similar features, are wholly immaterial; the rule prohibiting the purchase by the agent from himself without the principal's knowledge being intended to prevent the possibility of wrong, and to remove every temptation from the agent.

ID. — PURCHASE BY SUBAGENT APPOINTED TO SELL — BLANK DEED — PAYMENT TO AGENT — RATIFICATION — ACTION BY PRINCIPAL. — Where a subagent authorized to sell land reported to the agents who appointed him that he had received and accepted an offer for the property, and requested that if the sale was approved, the principal should sign an inclosed deed, which omitted the name of the proposed grantee, and, upon return of the blank deed with the principal's signature, inserted his own name therein, and sent his check payable to the order of the agents, who credited the principal therewith, and there is nothing to show that the principal knew of the check, or of the purchase by the subagent, no ratification of the transaction is shown, and the principal may treat it as void, and recover the property from the subagent.

ID. — EJECTMENT — LEGAL TITLE — VOID DEED — EQUITABLE DEFENSE. — The deed to the agent being void by reason of the filling in of his name as grantee after execution without authority from the principal, the legal title remained in the principal, and must prevail in ejectment, there being no paramount equity in the agent to the specific performance of a contract of purchase which can be enforced as an equitable defense to the action.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.

The facts are stated in the opinion of the court in the present case, and also in the opinion reported in *Arguello* v. *Bours*, 67 Cal. 447.

*George D. Collins*, for Appellant.

Bours was the subagent of Arguello, upon his own view of his relations to the property, and he represented Arguello in like manner with Faulkner, Bell & Co., the original agents. (Civ. Code, sec. 2351; *Gardner* v. *Ogden*, 22 N. Y. 350; 78 Am. Dec. 192.) As Bours was Arguello's agent, the law absolutely prohibited him from buying the property, unless he first communicated to his principal the fact that he was the intended purchaser. (2 Pomeroy's Eq. Jur., secs. 957, 958; *Ruckman* v. *Bergholz*, 37 N. J. L. 441; Story on Agency, secs. 210, 212; *Aberdeen* v. *Blaikie*, 1 Macq. 461; *York Co.* v. *Mackenzie*, 3 Pat. App. 378; Dunlap's Paley on Agency, 33; *Church* v. *Marine Ins. Co.*, 1 Mason, 344.) The fact that no fraud was contemplated and no injury done is immaterial, and the fact that the agent paid the full value of the property, and acted in good faith, and that the principal would have sold his property to any one for the price paid by the agent, is no defense whatever, assuming such to be the facts, where the agent purchases without knowledge of his principal. (*Fox* v. *Macreth*, 1 White and Tudor's Lead. Cas. Eq., Hare and Wallace's notes, 148, 152, and especially 159, 161; *Davoue* v. *Fanning*, 2 Johns. Ch. 259 et seq., 269; *Hamilton* v. *Wright*, 9 Clark & F. 124; *Romaine* v. *Hendrickson*, 27 N. J. Eq. 164; *Dobson* v. *Racey*, 3 Sand. Ch. 62, 63; *Torrey* v. *Bank of Orleans*, 9 Paige, 664; *Murphy* v. *O'Shea*, 2 Jones & S. 420; *Thornton* v. *Irwin*, 43 Mo. 163; *Corbett* v. *Woodward*, 5 Saw. 418; *Van Epps* v. *Van Epps*, 9 Paige, 241; *Michoud* v. *Girod*, 4 How. 554 et seq.; 2 Pomeroy's Eq. Jur., sec. 958.) Nothing will defeat the principal's right of remedy, except his own confirmation after full knowledge of all the facts. (2 Pomeroy's Eq. Jur., secs. 959, 964.) If the principal acted upon the supposition that he had made a binding contract, there is no ratification. (2

Pomeroy's Eq. Jur., sec. 964.) There can be no acquiescence without full knowledge of all the material facts. (2 Pomeroy's Eq. Jur., sec. 965.) Specific performance of a contract should be refused where the agent conceals the name of the purchaser. (*Hesse* v. *Briant*, 6 De Gex, M. .& G. 623.) It is conceded that the defendant is entitled to have credited on the amount received by him as the rents, issues, and profits of the property the sum paid by him as the purchase price, and the value of the improvements made. (*York Co. y. Mackenzie*, 8 Brown Parl. C. 70, 71; Code Civ. Proc., sec. 741.)

*James H. Budd*, for Respondents.

A vendee in possession under an executory contract, the conditions of which have been performed on his part, may avail himself of his equitable title as a defense to an action of ejectment brought against him by the owner of the legal title, and if from lapse of time or for any other reason he may have lost his right to an equitable decree, he will still be entitled to rely on his perfect equity as a defense to an action brought to deprive him of possession. (*Arguello* v. *Bours*, 67 Cal. 447; *Meeker* v. *Dalton*, 75 Cal. 154.) Bours was not the agent of Arguello for the sale of the real estate, nor, indeed, for any purpose. He could not be an agent to sell real estate, unless authorized so to do by his principal in writing. (Civ. Code, sec. 1741.) A mere agent of an agent is not responsible, as such, to the principal of the latter. (Civ. Code, sec. 2022.) If it be claimed that the contract without the deed be void, as not in writing, the answer is, that, under section 1741 of the Civil Code, Bours, by reason of his acts, was in position to enforce specific performance, and these facts can be set out as a defense in an action in ejectment. (*Arguello* v. *Bours*, 67 Cal. 446; *Meeker* v. *Dalton*, 75 Cal. 154.) The Arguello deed to Bours was not void, even were Bours Arguello's agent, and had he obtained the former's consent by a suppression of the claimed fact that he was the purchaser, as, under the provisions of our code, such a

consent is not void, even though based on or obtained through or by fraud, or the concealment of the fact of one's agency. (Civ. Code, secs. 1566, 1572, 1573.)  The person desiring to take advantage of the fraud, and recover that which he parted with by reason thereof, must rescind. (Civ. Code, sec. 1566.)

GAROUTTE, J. — This is an action in ejectment; defendant claims to be in possession under a perfect equitable title, and this appeal is taken by plaintiff from the judgment, upon a bill of exceptions.  The cause has been in this court before (67 Cal. 447), and it was there held that the deed to defendant to the realty in dispute, made by plaintiff's predecessor in interest, was void by reason of the fact that the grantee's name was not inserted therein until after it was signed and acknowledged.

At the time of the alleged sale of this land, which is situated in the city of Stockton, one Arguello, who resided at Santa Clara, was the owner thereof, and Faulkner, Bell & Co., residing in San Francisco, were his agents in attending to his property interests.  Respondent Bours resided in the city of Stockton, and, as the agent of Faulkner, Bell & Co., had charge of this property, collecting rents, etc.  Bours and Arguello were strangers to each other.

Upon August 19, 1876, the following letter was written to Bours: —

" Mr. Arguello thinks of selling his real estate in your town, and requests us to ascertain the price it would probably realize.        Yours,
                    " FAULKNER, BELL & Co."

In answer, Bours replied that business was dull, and he did not think the property would sell for over five thousand dollars.  This letter was forwarded by Faulkner, Bell & Co. to Arguello, to which he replied to Faulkner, Bell & Co., among other things: " Needing some money, I wish you would communicate with Mr. Bours, and try to sell this property at a price as near five thousand dollars as possible."

This letter was forwarded to Bours by Faulkner, Bell & Co., with the statement:—

"Trusting you will soon be able to advise the disposal of this property, we are,

"Yours,

"FAULKNER, BELL & CO."

To this, Bours wrote to F. B. & Co. that he had ordered an abstract of title to the property, had placed the matter in the hands of a competent broker, and hoped soon to report the sale of the property. This letter was also forwarded by F. B. & Co. to Arguello.

Shortly afterward, Bours wrote to F. B. & Co. that he had received an offer of four thousand five hundred dollars, free of all commissions, etc., for the property, and had accepted the offer, subject to the approval of the owner, and inclosed in the letter a deed to the property, to be signed and returned to him if Arguello approved the sale. The name of the grantee in the deed was omitted. This letter and deed were forwarded to Arguello by F. B. & Co.; he signed the deed and returned it to them; it was then sent to Bours, who inserted his name as grantee therein, and thereupon forwarded his personal check to F. B. & Co. for the amount of the purchase price, and they credited Arguello's account to that extent.

The foregoing deed was declared void in 67 Cal. 447, for the reason heretofore stated.

If the business relations existing between Arguello, Faulkner, Bell & Co., and Bours, as indicated by the foregoing facts, were not such as in equity prohibited Bours from purchasing this property, then he undoubtedly has a perfect equity, which must prevail in this action as against plaintiff's legal title. In section 959 of Pomeroy's Equity Jurisprudence, the author says that "equity regards and treats the relation of principal and agent in the same general manner and with nearly the same strictness as that of trustee and beneficiary"; and this rule is even more rigidly recognized by section 2322 of the Civil Code, which provides that "an authority ex-

pressed in general terms, however broad, does not authorize an agent . . . . to do any act which a trustee is forbidden to do by article II., chapter I., title VIII." of this code.   These provisions define the duties and obligations of trustees toward their beneficiaries fully and clearly, and are strictly in line with the principles laid down in Pomeroy's Equity Jurisprudence, sec. 959, where it is said: "The underlying thought is, that an agent should not unite his personal and his representative characters in the same transaction; and equity will not permit him to be exposed to the temptation, or brought into a situation where his own personal interests conflict with the interests of his principal, and with the duties which he owes to his principal."   And referring to a sale made under these circumstances by an agent to himself, the author says: "It will always be set aside, at the option of the principal; the *amount of consideration,* the *absence of undue advantage,* and other similar features are wholly immaterial."

This principle is elementary, and supported by authority both numerous and uniform. (*Michoud* v. *Girod,* 4 How. 554; *Gardner* v. *Ogden,* 22 N. Y. 343; 78 Am. Dec. 192.)

The law being established, let us see from the evidence what position defendant Bours occupied as to the property, and as to Arguello and Faulkner, Bell & Co.

Section 2349 of the Civil Code provides that "an agent, unless specially forbidden by his principal to do so, can delegate his powers to another person in any of the following cases, and in no others: . . . . 4. When such delegation is specially authorized by the principal."

It is unnecessary to pass upon the question as to whether Bours became the subagent of Arguello, under the foregoing provision of law, taken in connection with the letter written by Arguello to Faulkner, Bell & Co., which was forwarded by them to Bours, wherein he said: "Needing some money, I wish you would communicate with Mr. Bours, and try to sell the property at a price as near as possible to five thousand dollars."

XCII CAL.—8

Neither is it necessary, in order to justify a reversal of the judgment, to hold that Bours was the direct agent of Arguello, although the evidence would probably sustain findings to that extent.

There cannot be the slightest question but that Bours, in the transaction of finding a purchaser for this real estate, was either the agent or subagent of Arguello, or the agent of Faulkner, Bell & Co.; and as the law reads, his position from either stand-point is fatal to his claims, whenever and wherever judicially viewed by a court of equity. If he was the agent or subagent of Arguello in assisting in the consummation of a sale of his land, then, by becoming a purchaser thereof, he placed himself in a position which would naturally create a conflict between self-interest and integrity to his principal. Where a person buys from himself as the agent of his principal, danger surrounds the best interests of the principal, and it is the policy of equity to remove every temptation from the agent, by rigidly discountenancing all such transactions; and under the broad principles heretofore referred to, relating to the duties and obligations of trustees and agents, defendant's purchase of the realty cannot be sanctioned.

If we assume that defendant was simply the agent of Faulkner, Bell & Co. in this matter, then he is equally unfortunate in resting upon unstable ground. If the purchase in this case had been made by Faulkner, Bell & Co., as we have seen, no court would countenance it. The same principle must necessarily apply to a purchase made by their agent; no substantial distinction can be discerned in the *status* of the two parties. His duties and obligations to Arguello are required to fill the same measure as is demanded of his employer, and such should emphatically be the requirement in this case; for, as the agent of Faulkner, Bell & Co., he had the possession of all correspondence of Arguello relating to this matter, whereby he became acquainted with his anxiety to sell, the objects and motives actuating him in such desire; indeed, by this correspondence he became pos-

sessed of a knowledge of all the facts and circumstances pertaining to the property. If Faulkner, Bell & Co. could do by their agent what they were forbidden to do themselves, all the mischievous results would be present which the law we have adverted to was designed to prevent.

In Sugden on Vendors, p. 887, it is said: "Any persons who, by being employed or concerned in the affairs of another, have acquired a knowledge of his property are incapable of purchasing such property themselves."

In *Gardner* v. *Ogden*, 22 N. Y. 350, 78 Am. Dec. 192, this question was directly involved, and the court said: "The defendant Smith was the clerk, or assistant, of his principals. . . . . Whatever disabilities they labored under equally attached to him. It would work an entire abrogation of the rule to hold the principal subject to the operation of this rule, and exempt his clerks and agents from its effect. It would be opening the door to its evasion, so that it would lose all its vitality and virtue." Continuing, the learned justice writing the opinion said: "I think this is the spirit of all the authorities, and that the honesty and fairness of transactions between principals and their agents demand a firm adherence to these rules, and to bring within their operation, not only the agent himself, but those in his immediate employ, and who are engaged in the transaction of his business, which is, necessarily, the business of the agent's principal."

As we have already seen, it matters not that there was no fraud in this transaction, or that no injury resulted to Arguello from the sale. The rule is intended to prevent the possibility of wrong; and assuming that Bours paid full value for the property, and even acted in entire good faith throughout the transaction, still, such facts form no defense where the purchase was made by the agent without knowledge of his principal.

While a trustee may purchase the trust property where he deals openly with his beneficiary in the sale, and the transaction is in all respects fair and just, and the con-

sideration full and adequate, yet that is not this case; neither does the evidence disclose that Arguello ratified and confirmed the sale to Bours after a full knowledge of all the facts. Aside from the fact that Bours sent his personal check to Faulkner, Bell & Co. for the amount of the purchase price, there is nothing in the record to indicate that Arguello had any knowledge whatever that Bours was the purchaser; and as to that matter, it appears that the check was payable to Faulkner, Bell & Co., cashed by them, and the amount credited to Arguello's account, and nothing is disclosed by the record to indicate that Arguello ever saw the check or even imagined such a check was ever drawn.

In ejectment the legal title must prevail, unless overcome by a paramount equity. Having decided that defendant occupied such relations towards Arguello that he would not be allowed to become a purchaser of this real estate unless the sale was made with the full knowledge and consent of Arguello, or ratified and confirmed by him after a full knowledge of all the facts, neither of which conditions exist in this case, it necessarily follows that he is not the vendee under an executed contract of sale, is not in a position to enforce specific performance, and possesses no equity sufficient to defeat plaintiff's right to the recovery of the possession of this tract of land.

Let the judgment be reversed, and the cause remanded for a new trial.

De Haven, J., McFarland, J., Sharpstein, J., Harrison, J., and Beatty, C. J., concurred.