[L. A. No. 8498. In Bank.—December 30, 1926.]

ADA C. LANGFORD et al., Respondents, v. J. F. THOMAS et al., Appellants.

[1] AGENCY—OBLIGATIONS OF AGENT—VIOLATION OF TRUST.—The law of California imposes on a real estate agent the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary; and violation of his trust is subject to the same punitory consequences that are provided for a disloyal or recreant trustee.

---

1. See 4 Cal. Jur. 567.

[2] ID.—INTEREST OF AGENT ADVERSE TO PRINCIPAL—DUTY TO DISCLOSE. Under the statute, a party in his proposed employment as a real estate agent by other parties is barred from acceptance of employment, unless he discloses to his proposed principal the facts which may be adverse to the interest of the latter and after such disclosure is permitted by them to act as their agent.

[3] ID. — EXCHANGE OF PROPERTIES — SECRET PROFITS — LIABILITY OF AGENT TO PRINCIPAL.—Where a real estate agent accepted employment to exchange real property owned by his principals and consummated an exchange for property which he himself owned, subject to a contract of sale to other parties, which contract he procured a release from for a consideration, he is liable to his principals for secret profits made by him on the transaction, where he did not disclose the fact that he was the owner of the property being exchanged to his principals.

[4] ID.—ACTION TO RECOVER SECRET PROFITS.—In this action by principals to recover secret profits alleged to have been made by their agent in an exchange of properties for them, it is held that the third amended complaint stated a cause of action and the court did not err in overruling a demurrer to it or denying a motion to strike out portions thereof.

[5] ID.—VALUE OF LAND—IMMATERIALITY OF.—In an action against an agent for breach of trust and to recover secret profits obtained by him as a result of the agency relationship in the exchange of property of his principals for property owned by him, the value of the land is immaterial, as the principals are entitled to recover from the agent the difference between the price of the land purchased by him for them and the amount paid by the principals.

[6] ID.—ISSUES—FINDINGS.—Where the complaint in such an action alleges a cause of action arising from the false and fraudulent representations and concealments of the agent by which the principals were led to believe that they were dealing with third parties, when in fact they were dealing with the agent, upon which issues the court found in favor of the plaintiffs, issues raised by further allegations of the complaint touching the agent's representations as to the acreage of the land received by the principals and the amount of personal property thereon were immaterial and findings thereon unnecessary, as the judgment would not in any way be affected by findings on immaterial issues.

[7] ID.—EVIDENCE—LETTERS FROM AGENT TO PRINCIPALS.—In such a case, there was no error in excluding letters written by the agent to the principals requesting the latter to visit the former in order to adjust any grievance that might exist, where the letters were written long after the consummation of the transaction.

3.  See 4 Cal. Jur. 571.

[8] ID.—CONFLICTING EVIDENCE—RESOLVING IN FAVOR OF FINDINGS.—
In such a case, any conflict in the evidence upon the issues covered
by the findings must be resolved in favor of the findings; and it
is held that the findings were amply supported by the evidence.

[9] ID.—MEASURE OF DAMAGES.—In such a case, the agent is properly
held answerable to his employers for the full amount of his secret
profits realized on the transaction which he as their agent and
trustee conducted for them as principals and beneficiaries of the
trust.

---

(1) 9 C. J., p. 536, n. 25. (2) 9 C. J., p. 537, n. 35. (3) 9 C. J.,
p. 537, n. 36, p. 538, n. 37. (4) 9 C. J., p. 552, n. 69. (5) 9 C. J.,
p. 549, n. 40, p. 553, n. 80. (6) 38 Cyc., p. 1969, n. 99. (7) 9 C. J.,
p. 553, n. 80. (8) 4 C. J., p. 775, n. 26, p. 883, n. 33. (9) 9 C. J.,
p. 549, n. 39.

APPEAL from a judgment of the Superior Court of San
Diego County. S. M. Marsh, Judge. Affirmed.

The facts are stated in the opinion of the court.

George H. Stone and Glen H. Munkelt for Appellants.

Hamilton & Lindley for Respondents.

SULLIVAN, J.—This is an appeal from a judgment in
favor of plaintiffs for $2,136.99 and costs against the de-
fendants for damages for violation of their duty as real es-
tate agents during the period of their employment as such
by plaintiffs.

The case was tried by the court without a jury and find-
ings were filed covering all material issues by the trial judge
on November 25, 1924, the date of the entry of judgment in
the superior court of San Diego County.

The facts, as stated in the complaint on which the cause
was tried, as found by the trial court and as thoroughly
established by evidence at the trial, may be summarized as
follows:

1. On March 1, 1923, Ada C. Langford and Norton Lang-
ford, husband and wife, were the owners of a lot situated at

---

9. Right to retain property and recover from broker the amount
of secret profits, note, 34 L. R. A. (N. S.) 1211. See, also, 4 R. C. L.
278.

1505 Lewis Street, in the city of San Diego, referred to throughout the record as the "Lewis street property."

The value of the property at the time, as found by the court, was $8,000. It was subject to a mortgage for $3,250, making the net value of the property of the Langfords at that time $4,750.

The negotiations on the Langfords' part were conducted mainly by the wife.

2. J. F. Thomas at the time was conducting business as a real estate agent in the city of San Diego under the name of "The Crescent Realty Company," a defunct corporation.

3. On March 1, 1923, the Langfords, desiring to secure a chicken ranch and to make use of the Lewis Street property, in whole or in part, in securing the new property, employed Thomas as a real estate agent to conduct negotiations for them, Thomas accepting the employment and undertaking to effect a desirable exchange. Neither then nor at any time during the negotiations resulting in the exchange of properties did Thomas suggest any disqualifying or adversary interest on his part which might prevent his undivided service and loyalty as agent for the Langfords. At no time did, Thomas inform the Langfords, or either of them, that "he or anyone for whom he" was acting as agent had "an interest present or contingent adverse to that of his beneficiary," the Langfords. (See secs. 2230 and 2322, Civ. Code.)

As a matter of fact, at the time of making the engagement to act as agent for the Langfords, Thomas was disqualified to assume such agency, both by his own personal interest and his interest as agent for the Malletts in the Chula Vista chicken ranch.

4. As a result of the activities of Thomas assuming to act for all concerned, the Langfords parted with their equity in the Lewis Street property, worth $4,750, gave their note for $4,500, secured by mortgage on the chicken ranch, and paid off a street assessment lien of $121.99, due from Thomas or the Malletts, or both, on the chicken ranch. The aggregate cost to the Langfords to secure the Chula Vista chicken ranch was $9,371.99. The aggregate cost to Thomas of the chicken ranch deeded by him to the Langfords at the price of $9,371.99 was $7,235, made up of items which we shall presently state.

The difference between this latter amount and the price obtained from the Langfords was $2,136.99, for which amount the trial court gave judgment to the plaintiffs.

5. The Chula Vista chicken ranch, on March 1, 1923, when Thomas, as agent for the Langfords, engaged to negotiate an exchange of the Lewis Street property for a chicken ranch, was the property of Thomas subject to a contract of sale made by him on September 14, 1920, with Mildred Mallett and W. H. Mallett, under which he was to convey the same for a price of $6,250. On March 1, 1923, the balance due on the sale contract from Mallett and wife to Thomas was $3,500. To secure a release of the contract right of the Malletts in the Chula Vista chicken ranch, Thomas canceled his claim for the $3,500 unpaid balance and paid to the Malletts an additional sum of $3,735—making a total cost to Thomas of the ranch, $7,235.

Without burdening this opinion with all the details of the *one* transaction set out in the third amended complaint, we may say that Thomas as trustee for the Langfords violated his duty (a) by nondisclosure of his disqualification owing to his antecedent and continued ownership of the Chula Vista chicken ranch, (b) by his agency for the Malletts, (c) by concealment and suppression of essential facts likely to affect the action of the Langfords, (d) by misrepresentation and such other fraudulent device as would aid him in securing for himself the Lewis Street property in San Diego and getting rid of the chicken ranch with its lien of $121.99.

[1] The law of California imposed on Thomas, the real estate agent, the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary. Violation of his trust is subject to the same punitory consequences that are provided for a disloyal or recreant trustee. (*King* v. *Wise*, 43 Cal. 628.) The case cited was one of secret profits realized by an agent out of a transaction handled by him for the benefit of two associates and himself in a common enterprise.

Justice Niles in 1872, speaking for an undivided court, declared that "By the terms of the original agreement between the defendant and the plaintiffs, Crossett and King, the defendant was to purchase the land for the least price for which it could be purchased, and for the benefit of the three parties concerned.

"By this agreement the defendant assumed a position of trust, and in that relation was bound to exercise the utmost good faith towards his associates in the transaction. It is one of the plainest principles of equity that an agent cannot make a profit out of his principal in the business of his agency. The defendant, as associate of the plaintiffs in the proposed purchase, and entrusted by them with its management, was held to the same good faith, and could make no bargain, the benefits of which his co-associates would not be entitled to share."

The Civil Code enacted at the legislative session of the same year (1872) crystallized the adjudicated law of earlier days into statutory form as Civil Code sections declaring the rules for the government of agents and trustees in their dealings with principals and beneficiaries. Section 2322 of the Civil Code as then enacted and still in force provided that "An authority expressed in general terms, however broad, does not authorize an agent . . . (3) to do any act which a trustee is forbidden to do by article two, chapter one of the last title."

In the article and chapter thus referred to we find section 2230 of the Civil Code, which contains the following inhibition upon the activities of trustees: "Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he, or anyone for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary except as follows: (1) When the beneficiary having capacity to contract with a *full knowledge of the motives of the trustee and of all other facts concerning the transaction which might affect his own decision* and without the use of any influence on the part of the trustee *permits* him to do so. . . . " (Italics ours.)

[2] Under the statutory rule thus laid down for Thomas in his proposed employment as a real estate agent by the Langfords he was barred from acceptance of the employment, unless he disclosed all the facts to the Langfords and after such disclosure was permitted by them to act as their agent.

The law as laid down in these code sections has been frequently interpreted and applied. The case of *Calmon* v. *Sarraille,* 142 Cal. 638 [76 Pac. 486], decided in 1904, is

instructive. It was held in that case, as shown in subdivision 1 of the syllabus, as follows:

"Principal and Agent—Fiduciary Relation—Duty of Agent—Advantage Over Principal.—The relation of an agent to his principal is of a fiduciary nature, and not only imposes upon the agent the highest good faith toward the principal, but precludes him from obtaining any advantage over him in any transaction had by virtue of his agency."

In the opinion in the same case at page 641 we find the following:

"The relation between Garnier and the plaintiffs was of a fiduciary nature, and not only imposed upon Garnier the duty of acting in the highest good faith towards the plaintiffs, but precluded him from obtaining any advantage over them in any transaction had by virtue of his agency. Subdivision 3 of section 2322 of the Civil Code, forbids an agent from doing 'any act which a trustee is forbidden to do' under sections 2228, 2231 of the Civil Code. Section 2228 declares that 'In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by . . . *concealment';* and section 2231 declares that 'A trustee may not use the influence which his position gives him to obtain any advantage from his beneficiary.' (See, also, Story on Agency, sec. 211; Mechem on Agency, sec. 470; *Bunker* v. *Miles,* 30 Me. 431 [50 Am. Dec. 632]; *King* v. *Wise,* 43 Cal. 628; *Rubidoex* v. *Parks,* 48 Cal. 215; *Burke* v. *Bours,* 92 Cal. 108 [28 Pac. 57]; *Sterling* v. *Smith,* 97 Cal. 343 [32 Pac. 320].)"

[3] Cases to like effect covering the intervening years might be multiplied indefinitely, but it would be a work of supererogation. Thomas by his own showing under the circumstances attending his conduct became answerable as an unfaithful trustee for any benefits, profits, or advantages realized by him.

[4] A brief reference to the eleven specific grounds for reversal urged by the appellants may be proper.

I. The trial court overruled a demurrer to the third amended complaint and denied a motion to strike out certain portions thereof. Appellants insist that the third amended complaint did not state a cause of action. As we read

the complaint in the light of the law applicable as above stated the ground is not tenable.

Neither do we find reversible error in the ruling of the court on the same demurrer on the grounds of uncertainty or misjoinder of causes of action.

II. Appellants here contend that their motion to strike certain portions of the complaint was improperly denied. As stated in appellants' brief, the motion was made so as "to eliminate all allegations which tend to present two causes of action."

The complaint detailed but one transaction and stated but one cause of action. The motion to strike was properly denied.

III. For a third contention the appellants urge that the court below erred in excluding testimony touching the value of the Mallett chicken ranch.

[5] In an action against an agent for breach of trust and to recover a secret profit obtained by said agent as a result of the agency relationship the authorities are to the effect that the value of the land is immaterial on the ground that "The plaintiffs should have from the defendant the difference between the price of the land purchased by him for the plaintiffs and the amount paid by the plaintiffs." (*King* v. *Wise*, 43 Cal. 628, 634; *Calmon* v. *Sarraille*, 142 Cal. 638, 642 [76 Pac. 486].)

IV. As their fourth point the appellants contend that the trial court erred in excluding certain offered testimony of the agency of Thomas for the Malletts, insisting that "There is no objection to a dual agency if both parties are advised of the situation."

What we have said in the earlier part of this opinion disposes of the contention. The record herein fails to establish that the Langfords were informed of and consented to Thomas acting as the agent of the Malletts.

[6] V. Alleged failure of the trial court to find on material issues. We cannot say that the trial court failed "to find upon the material issues as framed by the pleadings." As we read the complaint, it alleges a cause of action arising from the false and fraudulent representations and concealments of Thomas by which the respondents were led to believe that they were dealing with the Malletts when in fact they were dealing with Thomas. The record re-

veals that the court below found upon all the material issues presented by said cause of action. The issues raised by the further allegations of the complaint touching appellants' representations as to the acreage of the chicken ranch and the amount of personal property thereon were immaterial and findings thereon unnecessary. The judgment entered would not in any way be affected by findings on said immaterial issues. (*Sharp* v. *Pitman,* 166 Cal. 501, 505 [137 Pac. 234].)

[7] VI. It is here urged that the lower court erred in excluding two letters addressed by the appellant Thomas to one of the respondents requesting that the latter visit the former in order to adjust any grievance that might exist.

We cannot see the materiality of the evidence and conclude that it was properly excluded. The letters involved were written long after the consummation of the transaction out of which this action arose and merely requested a meeting of the parties to adjust grievances. In addition, the letters contain many laudatory and self-serving declarations.

[8] VII, VIII, IX, X. We are of the opinion that the several findings complained of under the above headings are amply supported by the evidence. As already indicated, the evidence tends to show that the appellant Thomas by his conduct and activity, in effect, succeeded in substituting himself as principal in the place and stead of the Malletts. Any conflict in the evidence upon the issues covered by the findings complained of must be resolved in favor of said findings.

[9] XI. The final ground urged by the appellants for reversal is that the court erred in the measure of damages awarded to the respondents. This matter has been fully covered by us in the preceding pages of this opinion. In our opinion the trial court properly held Thomas answerable to his employers for the full amount of his secret profits realized on the one transaction which he, as their agent and trustee, conducted for them as principals and beneficiaries of the trust.

For the foregoing reasons the judgment appealed from is hereby affirmed.

Richards, J., Shenk, J., Seawell, J., Preston, J., Waste, C. J., and Curtis, J., concurred.