[Civ. No. 11517.   First Dist., Div. One.   Aug. 4, 1941.]

ANITA H. THOMPSON, Respondent, v. MILTON V. STOAKES et al., Appellants.

286

Breed, Burpee & Robinson for Appellants.

J. W. O'Neill for Respondent.

PETERS, P. J.—Defendants Stoakes and Osmundsen are partners engaged in the real estate business in Oakland under the name of Highland Realty Co. Defendant Jenkins is a real estate salesman employed by the partnership. Plaintiff, Anita H. Thompson, brought the present action to recover from defendants a secret profit alleged to have been made by them in a real estate transaction in which defendants represented plaintiff as agent. From a judgment for $2,494, based on a jury verdict, the defendants appeal.

Disregarding all conflicts in the evidence, and giving to the evidence of respondent the weight to which it is entitled in an appellate court, there can be no doubt that the evidence produced by respondent supports the implied finding of the jury that appellants committed a fraud upon respondent. Respondent owned, free from all encumbrances, a three-bedroom house in Piedmont which she valued at $7,500, and for which, some fourteen years before, she had paid $9,750, and which was rented for $60 per month. She desired to trade this house for an equity in a small apartment house. Appellants, as her agents, sought to secure such a trade for her. On July 12, 1939, appellant Jenkins told respondent that he had discovered a four-unit apartment house owned by a Mrs. Anderson; that Mrs. Anderson desired to secure a three-bedroom house; that the apartment was subject to a $7,200 encumbrance; that he thought he could secure a trade by getting Mrs. Anderson to accept the house, and respondent to accept the apartment subject to the encumbrance; that Mrs. Anderson wanted $15,000 for the apartment house. When respondent questioned Jenkins as to the value of the apartment house, he stated, "Mrs. Thompson, I could look the town over and I couldn't find a better buy for you than that house at $15,000." On July 13, 1939, respondent told Jenkins she would take the apartment house if Mrs. Anderson would take her house at $7,500. On the very next day, on July 14, 1939, according to Jenkins' testimony, he secured from Mrs. Anderson an exclusive option conferring upon the Highland Realty Co. the right to purchase the Anderson property for a total amount of $11,400. Admittedly, this fact was never communicated to respondent. On the day the option was secured Jenkins learned that the mortgage on the Anderson property was for $7,519.31 instead of $7,200 as previously represented. On July 15, 1939, respondent had two meetings with Jenkins. In the first, he told her the mortgage to be assumed was in the larger amount, and that respondent would have to pay $375 to the Highland Realty Co. as commission for selling her house. The commission was based on 5% of $7,500. Respondent refused to go on with the deal if she had to assume the larger mortgage. Jenkins again represented that the Anderson property was fully worth $15,000. Respondent refused to go ahead on the basis of the larger mortgage. Thereupon, Jenkins suggested that

a $500 mortgage be placed on the respondent's property, and that this would more than take care of the increase in the Anderson mortgage and would give respondent the cash with which to pay the Highland Realty Co. its commission. He told respondent that Mrs. Anderson would have to accept this proposition. Later the same day Jenkins returned with a form of exchange agreement. This agreement was partly typewritten and partly printed. It provided that respondent agreed to exchange her property for the apartment house in question. Mrs. Anderson's name did not appear thereon. In the space where the apartment house property was described, the agreement had the words, "owned by" printed thereon, but this was crossed out and the words, "controlled by Highland Realty Co." were typed above. Under the terms of this agreement, respondent was to trade her home for the apartment and assume the $7,519.31 mortgage, and respondent was to receive $500 in cash. Thus, the price of the apartment house to respondent was the value of her home, fixed by her, and by the Highland Realty Co. in its agreement for a commission, at $7,500, plus the mortgage of $7,519.31, less the $500 credit, making a total of $14,519.31. The agreement further provided that the agent and broker were released from all responsibilities regarding valuations; that the principals had each investigated the properties to be exchanged; that Highland Realty Co. was authorized to act as agent for all parties and accept a commission from each; that respondent agreed to pay her agent, the Highland Realty Co., $375 commission for its services. Respondent testified that when she observed that Mrs. Anderson's name did not appear on the agreement and that the property was described as "controlled by" Highland Realty Co., she asked Jenkins about it; that he told her that Highland Realty Co. had an exclusive listing of the property; that this was the meaning of the words "controlled by" Highland Realty Co.; that they were acting for Mrs. Anderson in the transaction. She also asked Jenkins why she was to deed her property to Highland Realty Co. instead of to Mrs. Anderson. Jenkins told her this was necessary in order to place upon respondent's property the $500 mortgage. With this explanation, she signed the agreement. That same day Jenkins took respondent to the title company to arrange the escrow. She was there requested to sign a deed to her property naming appellant Stoakes and his wife as grantees. When she asked Jenkins as to the iden-

tity of Stoakes she was told that he was one of the owners of Highland Realty Co., and that it was necessary to take the deed in this form in order to take care of the $500 mortgage, and that after this was done her property was to be turned over to Mrs. Anderson. Respondent thereupon entered into an escrow numbered 269096. The escrow instructions contained substantially the same provisions set forth in the exchange agreement. Apparently the transaction by which appellants secured title to the Anderson property was handled by the same title company in an escrow numbered 269100. Respondent testified that after the deal was closed she took possession of the apartment house; that Mrs. Anderson had left some of her belongings therein; that, while cleaning the apartment formerly occupied by Mrs. Anderson, she found a copy of a document which disclosed that Mrs. Anderson had sold the apartment house to the realty company for $11,400; that she immediately got in touch with appellant Stoakes and told him she believed she had been ''defrauded''; that he stated, ''Don't use the word defrauded, just say you were high pressured, I don't like the word defrauded''; that, thereafter, she had several meetings with appellants; that, being unable to secure a satisfactory settlement of the matter, she instituted the present proceeding. The theory of respondent is that the difference between the $11,400 paid for the Anderson property by defendants, and the $14,519.31 charged her for the property, or $3,119.31, represents a secret profit which the agents should disgorge. In the complaint she prayed for $3,619, which does not allow for the $500 credit. In her brief, however, it is conceded that the correct figure is $3,119.31. This last figure is based on the assumption that respondent's residence had a value of $7,500. Since the verdict of the jury was for $2,494, the jury must have placed a lower valuation on that property. Since respondent has not appealed, the propriety of the lower figure need not be discussed.

■ It is elementary, of course, that an agent is dutybound to disclose to his principal all material facts and circumstances of the transaction handled by him; that the agent must exercise the utmost good faith; that he must acquire no secret interest adverse to his principal; that he cannot lawfully make a secret personal profit out of the subject of the agency; that if an agent conceals his interest in the property sold he is liable to his principal for all secret profits made by

him; that where an agent falsely represents the figure at which property can be purchased and then purchases it himself at a lower figure, charging his principal the larger price and pocketing the difference, he will be compelled to disgorge the secret profit; that the fact that the principal was willing to pay the larger amount or that the property may have been worth the amount charged the principal, is immaterial. (*Langford* v. *Thomas*, 200 Cal. 192 [252 Pac. 602]; *Williams* v. *Lockwood*, 175 Cal. 598 [166 Pac. 587]; *Calmon* v. *Sarraille*, 142 Cal. 638 [76 Pac. 486]; *Whiting* v. *Delozier*, 82 Cal. App. 525 [255 Pac. 861]; see cases collected in 1 Cal. Jur., p. 788, et seq.)  In the present case, the principal, instead of paying cash, turned in her residence property and assumed a mortgage on the apartment.  She urges that, under such circumstances, the price paid by her is to be computed by ascertaining the cash value of the property turned in by her, plus the amount of the mortgage.  This theory is undoubtedly sound, and is supported by *Langford* v. *Thomas, supra.*

Appellants do not challenge these well-settled principles, but contend that they have no application to the facts of this case.  They urge that if the principal knows that the agent is himself acting as a principal in the transaction he is without right to hold the agent for a profit made by him, and that the evidence shows that respondent had actual, as well as constructive, knowledge that appellants owned the Anderson property.

So far as actual knowledge is concerned, it is contended that the exchange agreement signed by respondent, disclosed that Highland Realty Co. was acting as a principal in the transaction.  The general provisions of the agreement have already been summarized.  While it is true that the agreement states that respondent is to exchange her property for the apartment "controlled by" Highland Realty Co., and that Mrs. Anderson's name does not appear thereon, and, while it is also true that the agreement required her to deed her property to the Highland Realty Co., the agreement also contains several references to the Highland Realty Co. as agent, and, furthermore, it contains a provision authorizing the Highland Realty Co. to act as agent for all parties, and to accept a commission from both parties.  Moreover, as already pointed out, before respondent signed the agreement, in response to her question as to what the words "controlled by Highland Realty

Co.'' meant, she was told by Jenkins that the firm had an exclusive agency on the Anderson property, and when she asked why she was not deeding her property to Mrs. Anderson she was told that this was necessary to enable the Highland Realty Co. to place the $500 encumbrance against her property. It would seem too plain to require further comment that the jury was not required to find that by the terms of the exchange agreement respondent was informed that Highland Realty Co. was acting as a principal in the transaction. Admittedly, and the agreement expressly so provided, the Highland Realty Co. was being paid a commission to act as respondent's agent. Respondent was entitled to place trust and confidence in Jenkins. Circumstances which might have put her on inquiry had she been dealing at arm's length, should not have that effect in transactions with a trusted agent. In fact, it seems quite clear to us that the jury was entitled to believe, as it did, that the very form of the exchange agreement, when coupled with the representations of Jenkins, was calculated to deceive the respondent, and was part of the plot to defraud her.

■ Appellants next contend that respondent had constructive knowledge of the facts by reason of the escrow instructions. It is urged that the title company, as escrow holder, acted as respondent's agent, and that notice to the agent is notice to the principal. It is therefore urged that respondent is charged with constructive notice of all the papers in escrow. The evidence shows that, in connection with this transaction, there were two escrows handled by the title company. One, numbered 269096, was the escrow in which respondent placed her deed. The other escrow, numbered 269100, was the escrow between Highland Realty Co. and Mrs. Anderson. There is no evidence in the record that respondent was a party to escrow 269100—in fact, the inference is that she was not. The instructions in that escrow were not introduced into evidence. It is true that early in the trial counsel for respondent stated to the jury that respondent had placed her deed in escrow 269100, but it is obvious that this statement was in error. The record shows that later in the trial this error was cleared up. Apparently, the title company placed all the money involved in the two transactions in escrow 269100, and paid respondent the $500, less the various deductions, out of that escrow. But the fact remains that respond-

ent deposited her deed and signed instructions in escrow 269096, and was never a party to, nor did she sign instructions in escrow 269100. The implied finding of the jury that there were two separate escrows, and that respondent was not a party to escrow 269100, is amply supported by the evidence.

Under these circumstances, it is obvious that the doctrine of imputed knowledge has no application to the facts. As a matter of substantive law, where a positive fraud has been perpetrated by one agent, appellants herein, such fraud does not become non-actionable because of the knowledge of another agent, the escrow holder, of facts not communicated to the common principal. As between two innocent parties, notice to the agent of one is notice to the principal, but, as between the principal and the fraudulent agent, notice of another agent should not be imputed to the principal. It is true that in *Early* v. *Owens,* 109 Cal. App. 489 [293 Pac. 136], the court held that an escrow holder was the agent of both parties to the escrow, and that knowledge of the agent was imputed to the principals. The case seems to be predicated on the assumption that all parties to an escrow have the legal right to examine all the papers deposited in the escrow. But, at most, the rule of that case simply means that all parties to an escrow are chargeable with notice of the papers in that escrow. Where there are two escrows, the doctrine of imputed knowledge has no application to documents deposited in the escrow to which the party sought to be charged with notice was not a participant. In *Anderson* v. *Geo. L. Barney Co., Inc.,* 1 Cal. App. (2d) 340 [36 Pac. (2d) 717], the same court that had written the Early case, *supra* (in fact, the same justice is the author of both opinions), held that the rule of the Early case had no application where there are two escrows, and where the facts disclosing the fraud of the real estate agent do not appear in the escrow to which the complaining principal is a party. That is exactly the situation involved in the present case. Moreover, it should be pointed out that in *Early* v. *Owens, supra,* the appellate court expressly held that the finding that the principal had actual knowledge was supported by the evidence.

█ The last major contention of appellants is that the trial court committed error in excluding evidence of the price at which they sold respondent's property after the transac-

tion here was closed. Respondent placed a value of $7,500 on her property. This was also the value placed upon the property by appellants because they charged her a commission based upon that figure. Respondent brought the present action for the purpose of recovering the difference between the price appellants paid for the Anderson property and the amount they charged respondent. Since respondent paid the price not in cash but with her residence property, appellants argue that the value of the residence was in issue in determining the price paid by respondent for the apartment house. The trial court sustained objections to several questions asked by appellants on direct examination of their own witnesses as to the price at which the appellants had sold the residence property after securing title thereto. The refusal of the trial court to permit expert witnesses to testify on direct examination as to how much the property sold for subsequent to the transaction here involved was not error. Whatever the rule may be in other states, the rule is well-settled in this state that on the direct examination of witnesses called to testify as to value, they cannot be permitted to testify as to particular transactions, such as sales of similar or the same property. (*Estate of Ross,* 171 Cal. 64 [151 Pac. 1138]; *Central Pac. R. R. Co.* v. *Pearson,* 35 Cal. 247; *Merchants Trust Co.* v. *Hopkins,* 103 Cal. App. 473 [284 Pac. 1072]; see, also, 10 Cal. Jur., p. 1027.) Appellants attack that rule and contend that it should be limited to sales of other properties, but should not apply to sales of the very property the value of which is in issue. The above cases stated the rule as applying to such a situation. ■ Moreover, the record shows that experts for appellants testified at length as to value, so that the exclusion of this evidence, even if erroneous, could not have prejudiced appellants.

The other contentions of appellants are without merit.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 2, 1941.