[Civ. No. 3577.   Fourth Dist.   Mar. 31, 1948.]

GEORGE KHATCHADOURIAN, Respondent, v. RACHEL
T. DAVIDIAN, Appellant.

Van E. McCarty, David E. Peckinpah and L. N. Barber
for Appellant.

Harry Sarkisian and Lawrence W. Young for Respondent.

GRIFFIN, J.—On September 11, 1946, the trial court
ordered specific performance of a contract for the sale of real
property.   On January 3, 1946, plaintiff and defendant en-
tered into an agreement in the form of written instructions
signed by both and deposited with the title company for the

sale to plaintiff of certain real property of defendant consisting of 40 acres of orchard and vineyard situated near Kingsburg, in Fresno County, together with certain trays and other farming implements located thereon, for the sum of $23,000, of which $13,000 was to be paid in cash, and $10,000 in deferred payments to be secured by trust deed. The complaint was in the usual form and alleged that the value of the property at the time of the execution of the contract did not exceed the sum of $23,000, and that the contract was in all of its provisions fair and reasonable as to defendant.

The answer denied these allegations and alleged that the value of the property was in excess of $35,000.

The court found in accordance with the allegations of the complaint and entered judgment for the delivery of a deed and bill of sale conveying the property to plaintiff, upon the payment of the cash consideration and delivery of the note and deed of trust provided by the contract, directed defendant to account to plaintiff for all the rents, issues and profits received by her from the property after the making of the contract, and enjoined her from removing any crops growing on the property.

According to defendant's brief, which plaintiff concedes is a fair statement of the testimony, defendant testified that she was a widow of about the age of 70 years; that she became acquainted with the plaintiff about three years before the trial of this action; that at that time he offered to buy her 40 acres for $23,000 and that she refused; that on February 2, 1945, plaintiff became a real estate salesman and on June 1, 1945, defendant signed a card listing her 40 acres with plaintiff as broker for the selling price of $37,000. On the card it was estimated that the gross income from the property in 1944 was $14,000. The sale was to include the crop for 1945. The authorization for such sale was to remain in full force for 30 days and thereafter until revoked by defendant in writing. Defendant further testified that she did not see plaintiff again until she went to his office on December 31, 1945; that no one went out to look at her place and plaintiff was not there during that time. When she stopped in to see plaintiff on December 31, 1945, she said she asked him why he could not sell her place and that he told her she was asking too much for it and that he claimed that it had certain defects which he enumerated as affecting the sale price; that he said he wanted to buy the place himself and "be a nice neighbor of hers"; that he did not say anything about

696

the price at that time but she could "see that he wouldn't put any more than $23,000" into it; that she met him again on January 2, 1946, and asked him if he would give any more than that; that he replied that he would not and that she signed the agreement to take that amount; that she knew nothing about real estate values at that time and had made no investigation of her own; that she trusted him in every word he said "because he talked so nice"; that a few days thereafter, when she told other people about her sale they asked her "why in the world you sold that so cheap." Thereafter she repudiated the sale.

Plaintiff testified that he met defendant in October, 1944, when he went to buy her grapes and that he had a conversation with her in reference to selling her place; that he asked her her price and she wanted $24,000; that he offered her $20,000 and she refused; that she then offered it to him for $23,000 and he refused; that after he became a real estate salesman she asked him to advertise her property for sale at $37,000; that he did so but secured no customers. However, he did testify that he had an offer of $30,000, with the crop. He then testified that on July 1, 1945, defendant came to his office and told him not to make any further effort to sell the property, and that he did not try to sell it after that. Defendant denied this conversation. Plaintiff then said that on December 31, 1945, defendant came to his office and asked him if he was still interested in buying her place himself; that he told her he would if the price was right; that she asked $22,000; that he thought a bit and told her that was all right and asked her to make the papers out that day; that she said she would have to see her boy and would return on January 2d; that on that day she told him that her boy would not sell for less than $23,000; that he told her that in view of the fact that she had paid the taxes, that if she would turn over to him the insurance on the house and such equipment as was on the place, he would pay the price. He denied making any misrepresentations as to the condition of the vines, trees or soil or as to the value of the property. As to the value of the land at the time he purchased it, he said he thought he had paid $2,000 more than it was worth on the market, although at the time of trial, with the crop, he figured the value was around $27,000 or $28,000.

Defendant called several expert witnesses, real estate men, who gave an opinion that the value of the 40 acres on Janu-

ary 3, 1946, was around $31,000 or $32,000, because they were familiar with market values of improved land in that vicinity.

Plaintiff called two similar expert witnesses who testified that they had had many years of experience in the real estate business in that community and had managed vineyards and peach orchards all over the county; that they went to the property here involved and examined it for the purpose of making an appraisal as of that date; that the reasonable value of the property was then $23,015. It was stipulated that these experts would testify that they sold no property in the vicinity and made no investigation other than looking at the property themselves.

One of the questions raised on this appeal involves the testimony of one Friesen, called as a witness by plaintiff, who testified that he lived in the general vicinity of the property here involved; that he owned 10 acres similar in character to that owned by the defendant. Counsel for plaintiff then asked him: ''What did you pay for it?'' An objection was interposed under the claim that plaintiff was not permitted to prove the value of his property by what similar property was bought or sold for. The court allowed the question to be answered. The reply was $5,500.

A judgment was entered in accordance with the findings and a motion for new trial was denied.

This appeal is taken upon the following grounds: (1) That the court erred in overruling objections to the testimony of the witness Friesen for the reasons claimed and that such error was prejudicial to the substantial rights of the defendant, citing *Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473 [284 P. 1072]; *Hibernia Savings & Loan Society* v. *Ellis Estate Co.,* 132 Cal.App. 408 [22 P.2d 806]; and 10 Cal.Jur. §§ 281-282, p. 1027.

Plaintiff argues that even if the admission of Friesen's testimony as to the price he paid for his property was erroneous, it was not such an error as to prejudicially affect the substantial rights of the appellant since there was other substantial and competent evidence on the subject; that this claimed error was presented on a motion for a new trial which was denied, and since the trial was before the court sitting without a jury, no prejudicial error resulted, citing *Sooy* v. *Kunde,* 80 Cal.App.2d 347, 357 [181 P.2d 758]. We are inclined to this same conclusion. (*Thompson* v. *Stoakes,* 46

Cal.App.2d 285, 292 [115 P.2d 830] ; *Atchison, Topeka & S. F. Ry. Co.* v. *Southern Pacific Co.,* 13 Cal.App.2d 505, 512 [57 P.2d 575] ; *City of Los Angeles* v. *Hughes,* 202 Cal. 731, 736 [262 P. 737] ; *Reclamation District No. 730* v. *Inglin,* 31 Cal.App. 495, 500 [160 P. 1098].) ■ Defendant's next attack involves the argument that the consideration for the contract was inadequate, that the contract itself was not just or reasonable, and that because of the asserted confidential relationship between herself and plaintiff, under section 3391, subdivision 3 of the Civil Code plaintiff is precluded from having his contract specifically enforced. The evidence on these subjects was conflicting and the trial court determined this conflict in favor of the plaintiff. The determination of the trial court will not be disturbed. (*Estate of Kay,* 30 Cal.2d 215, 225 [181 P.2d 1], and authorities there cited.)

■ The last objection involved that portion of the judgment which restrains defendant from removing from said real property any crops and products grown thereon, from the third day of January, 1946, or "now growing thereon." It is argued that plaintiff had no interest in the crops which entitled him to such an injunction as would prevent her from harvesting and removing them so long as she remained in possession of the property, citing *Fritcher* v. *Kelley,* 34 Idaho 468 [201 P. 1037]. In this connection it is further argued that that portion of the judgment is also erroneous which requires the defendant to account to the plaintiff for all receipts of rents, issues and profits derived from the property since January 3, 1946; that since the complaint does not contain a prayer for an accounting and since there is no finding and no facts produced which would support a finding as to any alleged rents, issues or profits, respondent's measure of damages for the wrongful retention of the land was the reasonable value of the use and operation of it, citing *Coleman* v. *Dawson,* 110 Cal.App. 201 [294 P. 13] ; and *Chase* v. *Blair,* 105 Cal. App. 744 [288 P. 681].

In answer to this contention plaintiff points out in his brief that after the rendition of the judgment herein a contract was entered into between plaintiff and defendant under which defendant was permitted to remain in the uninterrupted possession of this property pending the disposing of this case on appeal; that under the terms of the contract defendant agreed to care for the property and produce the crops and a fixed percentage of the proceeds of the crops was made pay-

able to plaintiff "as and for the value of the use and occupancy of the property" by the defendant after the date of the contract of sale; that the contract provides: "It is agreed that the judgment entered in said action shall be read together with this agreement to the end that each party hereto shall get whatever each party is entitled to. Where there is a conflict, the provisions of this agreement shall prevail"; that the contract provides for the repayment to defendant of all proceeds of crop money received by plaintiff, should the final judgment be in defendant's favor, and the right to keep all such sums so received by plaintiff should the final judgment be in plaintiff's favor.

This issue was partially presented and discussed in an appeal from an order appointing a receiver (*Khatchadourian* v. *Davidian*, 79 Cal.App.2d 539 [179 P.2d 853].) It was there pointed out that under the issues presented by the complaint and answer the right of the plaintiff was to receive a deed to the land upon his paying certain money and giving certain security. The defendant was testing plaintiff's right to receive a deed and was holding the property under a claim of right until that issue could be decided, and it was there said:

"It is well settled in this state that the party in possession, under such circumstances, is entitled to the crops produced on the land in controversy until such time as a conveyance has been made or a judgment entered, and that the other party if successful in his efforts to obtain possession of the property, would then be limited to a right of action for the value of the use and occupation of the property during such time as such possession had erroneously been withheld from him."

There was no mention in the escrow instructions about growing crops or profits. It did provide, however, that defendant would give possession of the real property within 30 days from January 3, 1946.

The portion of the judgment thus complained of restrains defendant from removing crops grown on the premises since January 3, 1946, and orders her to account to plaintiff for profits derived therefrom. It clearly appears that a determination of this issue would be, as to the parties here involved, only academic, and would not determine any rights between them because they have, as set forth in the brief, mutually agreed that the crops could be removed and sold and each party has agreed as to the method of accounting. Under these circumstances, a decision of the legal question presented in

700

reference to that portion of the judgment would be of no benefit to either party and a reversal of that portion of the judgment would be ineffectual. (*Wright* v. *Board of Public Works,* 163 Cal. 328 [125 P. 353] ; 2 Cal.Jur. § 580, p. 981.)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1948.