[Civ. No. 25502.   Second Dist., Div. Two.   Oct. 23, 1961.]

Estate of WALTER De HART, Deceased. WOODROW L. LEWIS et al., Appellants, v. WALTER EUGENE De HART, as Administrator, etc., Respondent.

Woodrow L. Lewis and Agnes M. Lewis, in pro. per., for Appellants.

Ball, Yudelson, Brown & Di Giuseppe and Collman E. Yudelson for Respondent.

FOX, P. J.—This is an appeal from an order vacating a minute order confirming a sale of real estate.

The property here in question was located at 21307 Caroldale Avenue, in Torrance; it is a part of the estate of Walter De Hart, deceased, and appraised at $10,500. The administrator engaged Woodrow L. Lewis who is licensed and operates as a real estate broker under the fictitious firm name of A & M Real Estate, to obtain a purchaser for this property and agreed to pay said broker a commission for effecting a sale thereof. In due course the broker presented to the administrator a proposal from Agnes M. Lewis to purchase this property for $9,600. The administrator thereupon filed a petition for the confirmation of the sale to Mrs. Lewis, which came on for hearing in the probate court on July 5, 1960, at which time a minute order was entered confirming the sale and providing for the payment of a commission to A & M Real Estate for services as agent in obtaining the purchaser and effecting the sale. On July 7th an escrow was opened to consummate the sale between the estate and Mrs. Lewis. The purported purchaser, Mrs. Lewis, is the mother of Woodrow Lewis, the broker. This relationship, however, was not disclosed to the administrator, although inquiry was made on behalf of the administrator as to what, if any, relationship existed between the broker and his prospective purchaser.* Seventeen days later, on July 22d, a contract was entered into by Mrs. Lewis for the sale of this property to Michael P. Brink, who testified that the purchase price was $11,900, with a down payment of $500, a first trust deed of $8,400, and a second of $3,000; with monthly payments of $97, $67 of which was to be paid on the first encumbrance and $30 on the second.

*In a letter dated May 10, 1960, counsel for the estate after referring to other matters, made the following inquiry of appellants: "We note that the name of the purchaser is Agnes M. Lewis, an unmarried woman. Due to the similarity of names involved, please advise whether or not Miss Lewis is any relation to your office or any of the principals in your office, and, if so, whether or not your office has any continuing interest in such real property, whether as joint venturer, broker, or otherwise. Please state any such interest and relationship in full and in detail. Based on what your letter may disclose, it may be necessary to furnish affidavits to the court, and it may be necessary that evidence be submitted in court on the point." The record does not contain any reply to this inquiry.

The initial phase of the Brink transaction was handled by Mr. Lewis. He received and receipted for the down payment the Brinks made. It appears that the Brink deal contemplated that the estate would subordinate its interest of $3,000 in the property to a new and increased first encumbrance of $8,400. Provision for a new first encumbrance was made in the escrow instructions between the estate and Mrs. Lewis. It was there stated: "It is hereby understood that a new first deed of trust, the loan to be executed by Lewis and Sons [a firm name under which Mrs. Lewis' other two sons also acted as brokers], will be placed on the subject property." A loan commitment for $8,400 had been made by a lending institution.

On September 15th, the probate judge, who entered the minute order referred to above, issued on his own motion a citation directing Mr. Lewis, Mrs. Lewis, Mr. Brink, and the administrator to appear in his court at a specified time and there to show cause why the order confirming the sale of said real property to Mrs. Lewis should not be vacated and set aside. After an inquiry into the various phases of the aforesaid transaction, the trial court vacated its minute order of July 5th confirming the sale of the said property to Mrs. Lewis and authorizing the payment of a commission to A & M Real Estate [Mr. Lewis] as broker. In support of its order the trial court found, *inter alia,* that A & M Real Estate was employed by the administrator to obtain a purchaser for said property, that it agreed so to act and accepted such employment; that after agreeing so to act and in connection with such bid and previously confirmed sale said A & M Real Estate "in truth and in fact represented not the Administrator and the estate in accordance with such employment, but, at all times after the acceptance of such employment, represented said purchaser [Mrs. Lewis], and that such facts were wrongfully and fraudulently withheld from the court and the Administrator"; that said property was resold by Mrs. Lewis to Brink for $11,900 (a gross profit of $2,300) while the escrow covering the sale from the administrator to her was pending; "that A & M Real Estate, through Woodrow Lewis, a partner in such real estate firm, had knowledge" thereof; that "the foregoing facts constitute[d] a fraud upon this court and upon the Administrator in connection with the sale of said real property by the Administrator and the confirmation thereof"; and that such sale was not for the best interests of the estate or the beneficiaries thereof. The

evidence and the reasonable inferences therefrom adequately support the above findings.

■ "The relationship between a broker and his principal is fiduciary in nature, and imposes upon the broker the duty of acting in the highest good faith toward his principal. This duty of good faith precludes the broker from assuming a position adverse to that of his principal unless the principal consents. Moreover, it places upon the broker a legal obligation to disclose to his principal all the facts within his knowledge which are material to the matter in connection with which he is employed." (9 Cal.Jur.2d 199; *Bate* v. *Marsteller,* 175 Cal.App.2d 573, 580-581 [346 P.2d 903]. To the same effect see *Adams* v. *Herman,* 106 Cal.App.2d 92, 98 [234 P.2d 695]; *Thompson* v. *Stoakes,* 46 Cal.App.2d 285, 289-290 [115 P.2d 830]; *Whittaker* v. *Otto,* 188 Cal.App.2d 619, 624 [10 Cal. Rptr. 689].) ■ In *Schwarting* v. *Artel,* 40 Cal.App.2d 433, 441 [105 P.2d 380], this court stated: "When the acts of an agent have been questioned by his principal and the fiduciary relationship has been established, the burden is cast upon the agent to prove that he acted with the utmost good faith toward his principal [citations] and that he made a full disclosure prior to the transaction of all the facts relating to the transactions under attack." This statement was quoted with approval in *Adams* v. *Herman, supra,* and in *Bate* v. *Marsteller, supra,* page 581.

■ In appellants' opening brief they state: "The appellants readily admit that the broker, Woodrow Lewis, acted for the purchaser and yet claimed a commission from the estate to be paid out of the proceeds of the sale." Although inquiry was made, Woodrow Lewis failed to inform the attorney for the administrator that the purchaser was his mother. It was established from Mr. Lewis' own testimony that he had knowledge of the sale of the property to Mr. Brink at a substantial profit, for he handled the initial phases of that transaction during which time the escrow between the estate and his mother was still pending. This, too, was without the knowledge of the administrator. It also appears that it was contemplated that a large, new loan would be placed upon the property, to which the estate's interest would be subordinated.

From these facts it is apparent that the broker failed to act in the highest good faith toward his principal and that he failed to disclose to his principal all the facts within his

knowledge which were material to the transaction that he was employed to handle.

The trial court was therefore abundantly justified in vacating the minute order confirming the sale to Mrs. Lewis and allowing A & M Real Estate (Mr. Lewis) a commission for effecting such sale. To hold otherwise would be to open the door to all sorts of chicanery and double dealing and would be contrary to sound public policy and the fiduciary obligation which a real estate broker owes his principal.

But, argue appellants, the court did not find that a fiduciary relationship existed between the broker and the representatives of the estate; and that Mr. Lewis, the broker, was nothing more than a middleman. It is true that the court did not expressly find that a fiduciary relationship existed, but such finding is implicit in the findings that the court did make and in the order that it made. In this connection we must indulge every reasonable inference which the trial judge could properly draw from the facts and circumstances in this matter, and bear in mind that it is the province of the trial judge to evaluate the credibility of the witnesses and determine the weight to which their testimony is entitled. Applying these principles, it is obvious that it cannot be said as a matter of law that the broker owed the estate no fiduciary duty.

In an effort to show that the representatives of the estate knew that the broker, Woodrow Lewis, was representing the purchaser, his mother, the appellants sought and received permission to produce additional evidence in this court. This additional evidence consists of photostatic copies of letters from the attorney of the estate dated respectively May 10, June 3, and June 28, 1960, relative to the hearing on petition for confirmation of the sale on July 5th. They merely suggest that it might be advisable that a representative from the Lewis office be present to protect the position of the buyer in the event of higher bids being made in open court. There is not the slightest intimation in any of these letters that the attorney for the estate knew that the buyer was the mother of the broker.

There is no substance to appellants' argument that the evidence does not support (1) a finding that Agnes M. Lewis failed to disclose that she was a California licensed real estate broker; and (2) that an escrow for the resale of the property was pending simultaneously with the escrow covering the sale from the estate to Mrs. Lewis. Neither of these matters is

in any way material to the disposition of this case. Obviously it is unimportant whether the sale to Mr. Brink was through an escrow or simply by contract without any escrow.

Appellants seem to argue that they did not have a fair trial. In this connection they complain that the court issued the order to show cause on its own motion; that the trial judge conducted the hearing in "an inquisitorial fashion"; that he reached an opinion on a material issue before the evidence on the issue was submitted; and that he "apparently delegated to an adverse attorney the responsibility of deciding whether the vacating [of the order confirming the sale] was to the best interest of the estate." There is not the slightest merit in any of these complaints; they do not deserve specific discussion. The record discloses that appellants had a full opportunity to present their side of this controversy and that they had a fair trial.

The order is affirmed.

Ashburn, J., and Herndon, J., concurred.