[Civ. No. 4290.   Third Appellate District.—May 27, 1931.]

ARTHUR B. THOMAS, Appellant, v. P. N. SNYDER et al., Respondents.

Chase & Chase for Appellant.

Neice & Packard for Respondents.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—This cause is before us upon the judgment-roll alone, and involves the correctness of the conclusions of law drawn from the findings and the judgment rendered in pursuance thereof. The action was based upon the fraudulent conduct of the defendant, a real estate dealer, acting as agent of the plaintiff in the sale of certain lots whereby the defendant received large secret profits. The two lots involved are Nos. 137 and 138, fronting on a certain avenue known as and called "Industrial Avenue", directly across the street from an industrial plant established by the Pacific Goodrich Rubber Company, in the county of Los Angeles. With this statement, a *résumé* of the findings will adequately present the questions tendered for decision.

The court found that at all times mentioned in the plaintiff's amended complaint the defendant P. N. Snyder was the agent of plaintiff for the purpose of buying, selling and obtaining a purchaser for the two lots just mentioned; that at all times, until shortly before the commencement of this suit, the plaintiff believed in, and relied solely upon, and reposed full and entire confidence in the said P. N. Snyder, and in the latter's honesty, integrity, knowledge and judgment, and believed in, and relied upon, all the representations and statements which were made to the plaintiff by the said P. N. Snyder as to the values and desirability of buying and selling the two lots, and as to the method of

buying and selling the same, the prices to be paid therefor, and the time when to sell and the prices at which the same should be sold; that on or about the fourth day of March, 1925, the said defendant came to the plaintiff in the city of Los Angeles and induced the plaintiff to buy the two lots, upon contract, to be paid for in installments; that defendant represented to the plaintiff that before the second installment of principal on the purchase price of said lots would fall due, said lots would be sold at a greater price than the plaintiff would have to pay for the same; that the plaintiff thereupon purchased the two lots and obtained a contract of purchase and sale therefor; that on or about the sixteenth day of April, 1926, the terms and conditions of the contracts referred to were changed by mutual consent, as to the times of payment of the balance of the unpaid purchase price thereof; that on or about the month of February, 1927, the plaintiff being unable to pay the installments of the purchase price due upon said lots, went to said Snyder and informed him of his financial inability to make payment; that the said Snyder told the plaintiff that he would pay the balance of the purchase price, upon which promise the plaintiff relied; that the defendant Snyder failed to keep said promise, and failed to pay anything on the purchase price of said lots; that thereafter, and on or about the third day of May, 1927, the defendant Snyder telephoned to the plaintiff and informed the plaintiff, and represented to the plaintiff, that he, Snyder, had a customer who might buy the plaintiff's equity in said lots and in said contracts for the purchase of the same, for the sum of $2,250, and that possibly said customer would pay plaintiff $2,500 therefor; that the plaintiff relied upon that information, and believed the statements made by the defendant; that in truth and in fact such information and representations were false and untrue, were made in bad faith, and were known to the said Snyder to be false and untrue, and were made by him for the purpose of inducing the plaintiff to sell his equity in said lots and assign his contracts therefor, for the sum of $2,500; that at the said time said lots were worth much more than the sum of $2,500; that at said time, to wit, on the third day of May, 1927, the defendant Snyder knew, and had information and knowledge that the Goodrich Rubber Company, a large industrial manufacturing corporation, in-.

tended to and would build its Pacific Coast factory upon a site directly across the street, to wit, directly across Industrial Avenue from said lots, and knew that said industrial concern would very soon commence the building of said factory; that the same would cost a very large sum of money and that the factory would employ a large number of workmen, and that the lots owned by the plaintiff would be, and were very much enhanced in value; that the plaintiff had no knowledge of these facts, and the defendant, though acting as the agent of the plaintiff, concealed from the plaintiff all the facts just referred to relative to the establishment of an industrial plant by the Pacific Goodrich Rubber Company; that on the fourth day of May, 1927, at the request of the defendant P. N. Snyder, and by appointment made by and with the latter, plaintiff met said Snyder in the city of Los Angeles and was informed by said Snyder that he had a customer who would pay plaintiff $2,500 and no more for the contracts of purchase held by the plaintiff for the two lots referred to, and thereupon the plaintiff agreed to sell his equity in said lots and said contracts for the sum of $2,500 and delivered said contracts to the defendant and received from the defendant the following paper:

"Los Angeles, Cal. May 4, 1927.

"Received from Arthur B. Thomas contract between himself and the Bank of Italy for the purchase of lots 137 and 138 Tract No. 7066, for which I hereby agree that I am to pay Mr. Thomas $2,500.00 for his equity in said lots on or before May 7th, or said contract should be returned to him.

"(Signed) P. N. SNYDER."

That the plaintiff, believing that the defendant had a purchaser for the said lots for the price stated, assigned his contracts of purchase in blank, that is, that at the time the plaintiff assigned his interest in said lots, the name of the assignee or the purchaser of the lots was not inserted therein, and that thereafter, and on or about the eleventh day of May, 1927, said P. N. Snyder caused his name to be written in the assignment of said contracts, as the assignee thereof; that on the evening of the fifth day of May, 1927, defendant P. N. Snyder sent his personal check to the plaintiff for the sum of $2,500; that the defendant,

for the purpose of defrauding the plaintiff, and to induce the plaintiff to alter his position as to his injury, intentionally concealed from the plaintiff all information relative to the Pacific Goodrich Rubber Company establishing an industrial manufacturing plant, as hereinbefore stated; that thereafter, and on or about the ninth day of June, 1927, said Snyder sold said lots to Leon B. Valla for the sum of $22,500, of which amount $5,625 was paid by said Valla to said P. N. Snyder by said Valla's personal check, and the balance of said purchase price, to wit, the sum of $16,875, secured to said Snyder by a deed of trust to the defendant Title Guarantee & Trust Company as trustee, to secure payment of said $16,875 in installments of $5,625 each, installments payable November 14, 1927; May 14, 1928, and November 14, 1928, with interest at seven per cent per annum from May 14, 1927, interest payable quarterly.

The court further found that the defendant P. N. Snyder paid as expenses of his sale to said Valla the sum of $1350. It was also further found by the court that the sale made by the defendant Snyder and his wife to Leona B. Valla was made in good faith and without any fraudulent conduct or act on the part of the purchaser from the defendant Snyder. The court further found that on the twenty-ninth day of July, 1927, the plaintiff tendered to the said P. N. Snyder the sum of $2,544 which was the aggregate amount of said $2,500 paid to plaintiff by said Snyder, with interest thereon at the rate of seven per cent per annum from the date of payment. The court further found that by reason of the sale of said premises to Leon B. Valla, without any fraudulent act, conduct or knowledge on the part of said Valla, rescission of the sale of said lots by the plaintiff to the defendant Snyder could not be had; that the offer of rescission made by the plaintiff and the tendering back of the purchase price thereof, together with accrued interest, was promptly made by the plaintiff upon his discovering the fraud practiced by the defendant Snyder.

Upon the facts found the court drew its conclusions of law as follows: "That defendant, Leon B. Valla, was a *bona fide* purchaser in good faith and for value, without knowledge of plaintiff's rights in, and is now the owner of said lots 137 and 138 in Tract No. 7066 above mentioned, subject to the deed of trust mentioned, to secure the payment

of the promissory note from him to defendant P. N. Snyder, dated June 9, 1927, for $16,875.00, with interest thereon at seven per cent per annum, payable quarterly from May 14, 1927, which deed is recorded in Book 6876 of official records in the office of the County Recorder of Los Angeles County, State of California. . . . That the defendant, P. N. Snyder, obtained said lots and contracts above mentioned from plaintiff by fraud. That by reason of said lots having been sold to said Valla by defendant, said defendant Valla being a *bona fide* purchaser of said lots, it is impossible to restore plaintiff to his former right, title and interest in either said lots or said contracts; and that, therefore, this is a proper case in which to adjudge to plaintiff compensation from and against defendant P. N. Snyder. That therefore judgment should be' given for plaintiff that plaintiff have and own, and defendant P. N. Snyder assign to plaintiff, an interest in and amount of the principal of said $16,875.00 note to the extent of $8,075.00 of the principal thereof, and that the interest now due and hereafter to become due on said note in the proportion of 8075/16875ths of the whole of such interest be paid by defendant Valla, and anyone holding under him, to plaintiff, and that said Valla, and anyone holding under him, pay the remaining portion of the interest on said note to defendant P. N. Snyder. Each party to pay his own costs except that plaintiff shall pay said Valla's costs.'' Judgment was entered accordingly. ▪ From this judgment the plaintiff appeals, and assigns as error the conclusion of the court that the plaintiff is entitled to only $8,075, and not to the whole of the profits obtained and secured by the fraudulent conduct of the defendant. A simple mathematical calculation shows that the defendant defrauded the plaintiff of a larger sum of money than that awarded to him by the court, to wit: The sale price to Valla was found to be $22,500; the purchase price paid by the defendant to the plaintiff was the sum of $2,500; the difference in the purchase and the selling price being just $20,000. The court found that Snyder had incurred expenses in the sale of the property, of $1350. Assuming that Snyder was entitled to recoup his expenses, the fraudulent profit obtained by him would' still be the sum of $18,650. Under the findings not one

cent of this profit should have been permitted to be retained by the defendant Snyder.

Upon this appeal the respondent contends that the findings are insufficient to support any judgment in favor of the plaintiff, in that the value of the lots was not found by the court either at the time of the sale by the plaintiff to the defendant or at the time of the sale by the defendant to Valla. A large number of cases are cited to support the respondent's contention that the value of the property must be found in order to support a judgment for damages. It is also insisted by the respondent that the court made no finding as to the balance due upon the purchase price of the lots in question which had not yet been paid by the plaintiff at the date of the assignment of the contracts to the defendant. The findings, however, show that the defendant sold the lots for $22,500, without any reference to the unpaid portion of the purchase price, and therefore that the defendant obtained the full profit which we have hereinbefore set forth. Whatever balance there may be due on the purchase price of the lots in question was and is wholly immaterial, as it in nowise lessened the fraudulent profits obtained by the defendant nor does the value of the lots in question enter into the consideration in determining the merits of this case.

A complete answer to the respondent's contention is found in 12 California Jurisprudence, page 768, section 42. It is there said: "Where there is, between the parties, a relationship of trustee and *cestui que trust,* the principle that a trustee is bound to act in the highest good faith toward his beneficiary, and must not obtain any unfair advantage, operates to prevent the retention by the trustee of the fruits of his fraud, regardless of a showing of damage, and in case of fraud, the beneficiary may have the contract or other transaction set aside as void. Likewise, where the relationship of principal and agent is shown, a lack of showing of damage cannot justify the agent in retaining the fruits of his fraud."

While not set forth in so many words, as the damages suffered by the plaintiff, the findings do show that by the fraudulent conduct of the defendant the plaintiff has been damaged as hereinabove stated. Had the defendant, acting as agent for the plaintiff, observed the obligation of

the law concerning such relation, the plaintiff would not have conveyed the property to the defendant, but the property would have been conveyed directly to Valla, and the plaintiff would have paid the purchase price therefor. The findings, the substance of which we have set forth, show clearly that Snyder was guilty of a breach of faith; in other words, that he did not act toward his principal as the law of agency requires. What is required of an agent toward his principal is clearly set forth in the text found in 1 California Jurisprudence, page 789, as follows: "The proposition is conclusively settled that an agent is charged in full measure with the duty of good faith in his dealings with his principal, touching the subject of his authority. The animating principle in this proposition is that no one should, nor will be permitted to enjoy the fruits of an advantage taken of a fiduciary relation whose dominant characteristic is the confidence reposed in one person by another. The law requires perfect good faith on the part of agents not only in form but in substance, and not only from agents receiving compensation, but also from gratuitous agents. Indeed, the rule is so familiar as to be trite that the obligation of an agent to his principal demands of him the strictest integrity and most faithful service." Other requirements are set forth in the section containing the text from which we have quoted, suffice to say that the requirement of the law of the relation of agent and principal is to the effect that the agent cannot be allowed to profit at the expense of his principal, whether the result be reached by misrepresentation or concealment or other fraudulent device. This is further set forth in section 1709 of the Civil Code which reads: "One who wilfully deceives another with intent to induce him to alter his position, to his injury or risk, is liable for any damage which he thereby suffers." This is the definition of "deceit", and section 1710 of the Civil Code, defining "deceit" in subdivision 3, contains the following: "The suppression of a fact by one who is bound to disclose it," etc. We do not need to cite authorities to the effect that an agent is bound to disclose to his principal every fact within his knowledge which bears upon the value of the property with which the parties are dealing, and the concealment of which would lead to the injury of the principal. As stated in 1 California Jurisprudence, 799, section

85: "Any act of an agent with respect to the subject matter of the agency, injurious to the principal, may be avoided by the principal as between themselves." And as further said in the same section: "An agent will not be allowed to deal in his own behalf with his principal with reference to the subject matter of the agency unless he makes full, complete and honest disclosure of the truth of the transaction." To the same effect is the case of *Curry* v. *King,* 6 Cal. App. 568 [92 Pac. 662, 665], where this court, speaking through Mr. Justice Hart, took occasion to set forth the law showing that an agent is absolutely prohibited from dealing with the subject matter of the agency by concealment or otherwise, so as to enrich himself. The case of *Curry* v. *King, supra,* also holds that the value of the property involved is immaterial. The unlawful profits obtained by the agent by reason of his fraudulent conduct, is all that is necessary to be ascertained.

In *Rempel* v. *Kells,* 62 Cal. App. 81 [215 Pac. 1042], it is likewise held that the profits obtained by an agent through fraudulent conduct, constitutes the basis for recovery. This case also goes further and holds that an agent obtaining profits by fraudulent conduct and concealment from his principal, is not entitled to recover expenses incurred by him in connection with the property.

In *Calmon* v. *Sarraille,* 142 Cal. 638 [76 Pac. 486, 487], we find the following: "In all matters connected with his trust a trustee is bound to act in the highest good faith toward his beneficiary, and must not obtain any advantage therein over the latter by concealment." And section 2231 of the Civil Code declares that: "A trustee must not use the influence which his position gives him to obtain any advantage over his beneficiary (citing *King* v. *Wise,* 43 Cal. 628; *Rubidoex* v. *Parks,* 48 Cal. 215; *Burke* v. *Bours,* 92 Cal. 108 [28 Pac. 57]; *Sterling* v. *Smith,* 97 Cal. 343 [32 Pac. 320])."

In *Smith* v. *Elderton,* 16 Cal. App. 424 [117 Pac. 563], where a principal was defrauded by an agent in the purchase of stock, the principal was permitted to recover all the money paid by him, irrespective of the value of the stock. That case also contains the following which is pertinent here: "If a trustee makes money out of his *cestui que trust,* he must show affirmatively that the transaction was

perfectly fair; otherwise, the presumption of fraud is against him.''

While the authorities which we have cited show that an agent who has defrauded his principal is not entitled to any relief whatever, the findings in this case set forth that the defendant has expended the sum of $1350 in connection with the property. The testimony not being before us, and the sufficiency of the findings not being questioned by the appellant, and no question being raised as to the findings not being supported by the testimony, this item must be considered in determining the judgment which should have been awarded the plaintiff.

What we have stated shows beyond controversy that the findings are sufficient to support a judgment for the plaintiff, irrespective of the fact that the value of the land itself was not found by the trial court, the fraudulent profits obtained by the defendant which should have gone to the plaintiff not depending in any particular upon such finding being made.

Under the provisions of section 580 of the Code of Civil Procedure the court in this case not being able to award rescission, should have granted to the plaintiff full relief by awarding the plaintiff all the profits realized by the fraudulent conduct of the agent, to wit, the conclusions of law should have been drawn to the effect that the plaintiff was entitled to have and recover from the defendant the sum of $18,650 damages. That in the enforcement of this judgment the plaintiff was entitled to have set over and assigned to him the trust deed for the sum of $16,875, leaving a money judgment against the defendant in the sum of $1775. The plaintiff was also entitled to have and recover judgment for his costs and expenses incurred in the action.

So far as appealed from, the judgment is reversed, with directions to the trial court to draw conclusions from the findings to the effect that the plaintiff has been damaged in the sum of $18,650; is entitled to have set over to him the trust deed heretofore referred to, in part satisfaction of the amount of damages suffered by him; and that the plaintiff have and recover the further sum of $1775 and costs and disbursements incurred in this action.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 26, 1931, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 23, 1931.