[Civ. No. 1100. Fourth Appellate District.—October 10, 1934.]

ETHELYN B. ANDERSON, Respondent, v. GEO. L. BARNEY CO., INC., et al., Appellants.

Stearns, Luce & Forward and Fred Kunzel for Appellants.

George H. Stone for Respondent.

MARKS, J.—Plaintiff recovered judgment for $1726.50, being $300 real estate commission paid defendants, and $1426.50 secret commission or profit received by them while acting as her agents for the exchange of her real property.

Geo. L. Barney Co. was a duly licensed real estate broker and Raymond K. Worrell and Gaylord B. Parkinson were licensed real estate salesmen employed by and acting for and under the broker's license of Geo. L. Barney Co., as was S. B. De Silva. Hartford Accident & Indemnity Com-

pany furnished the real estate broker's bond for Geo. L. Barney Co.

Plaintiff owned property in Seattle, Washington, which she desired to exchange for property in San Diego, California. De Silva, who was related by marriage to plaintiff, introduced her to Parkinson, who showed her a number of properties in San Diego, among them one owned by Abraham L. Richey and Lettie L. Richey, his wife. On July 1, 1931, plaintiff signed a written offer to exchange her Seattle property for the Richey property and agreed to pay Geo. L. Barney Co. $500 commission if the transaction were consummated. She also agreed that Geo. L. Barney Co. might act for and accept a commission from the Richeys. This exchange offer and agreement expired by its terms in thirty days, but was extended by plaintiff to August 30, 1931. As the exchange was not made, the offer and agreement terminated on that date. Parkinson tried to consummate an exchange with another person but could not complete the transaction.

Richey informed defendants that he would accept $2,300 for his San Diego property. Defendants immediately attempted to find a cash purchaser for plaintiff's Seattle property. On December 28, 1931, they telegraphed agents in Seattle, asking if it could be sold for $4,000 cash. On January 2, 1932, they received a telegram from the Seattle agents conveying the information that a purchaser had been found who would pay $4,000 cash for the property. Other telegrams had been exchanged in the interim.

On December 30, 1931, Worrell and Parkinson went to De Silva's home and told him that a trade then pending between plaintiff and one Harris could not be consummated but that Richey was now willing to trade his San Diego property for the Seattle property. Plaintiff had gone to Pittsburg, California, for the holidays. Parkinson and De Silva went to that city and Parkinson again presented the Richey trade to her. He did not tell her that Richey was willing to sell his San Diego property for $2,300, or that her Seattle property could be sold for $4,000 cash. On January 2, 1932, he secured plaintiff's signature to escrow instructions agreeing to exchange her property for the San Diego property and to pay Geo. L. Barney Co. $300 com-

mission upon the consummation of the transaction. Mr. and Mrs. Richey approved the instructions and the deal was consummated and deeds recorded on January 23, 1932, by Mr. and Mrs. Richey conveying the San Diego property to plaintiff and she conveying the Seattle property to them.

At the same time another escrow was started with the same company handling the Anderson-Richey escrow. This second escrow was for the sale of the Seattle property by Mr. and Mrs. Richey to Tiney W. Griffith. Mr. and Mrs. Richey agreed to accept $2,300 for their San Diego property. Griffith agreed to pay $4,000 for the Seattle property. The deed from Mr. and Mrs. Richey to Griffith to the Seattle property was placed in escrow by Geo. L. Barney Co. with instructions to deliver it upon payment of $4,000 cash, which was to be disbursed as follows: $2,300, less expenses of sale to Richey and the balance of $1700, less expenses, to Geo. L. Barney Co. This company received $1426.50 from this fund in addition to $300 commission from the plaintiff. The money was expended as follows: $115 to plaintiff for adjustment on rents on the Richey property; $181 to De Silva to pay his expenses to Pittsburg and as his share for having introduced plaintiff to defendants; the balance one-third to each defendant. The deed from Mr. and Mrs. Richey conveying the property to Griffith was recorded on January 23, 1932.

The trial court found, and the finding is supported by the evidence, that on January 2, 1932, defendants knew that the Richey property could be purchased for $2,300 cash and the Seattle property sold for $4,000 cash; that this information was not communicated to plaintiff or to De Silva and that they did not know of it or that defendants had made $1426.50 secret profit out of the transaction until in July, 1932.

One principal ground of attack on the judgment is that the trial judge made no specific finding of fraud on the part of defendants. It is true that the findings do not contain the words "fraud" or "deceit". The findings do recite that the defendants had knowledge of facts which they concealed from plaintiff to their profit in the sum of $1426.50. Where the findings show facts which constitute fraud and deceit the absence of those words from the findings is immaterial.

In *Thomas* v. *Snyder*, 114 Cal. App. 397, at page 404 [300 Pac. 117], it is said:

"What is required of an agent toward his principal is clearly set forth in the text found in 1 California Jurisprudence, page 789, as follows: 'The proposition is conclusively settled that an agent is charged in full measure with the duty of good faith in his dealings with his principal, touching the subject of his authority. The animating principle in this proposition is that no one should, nor will be permitted to enjoy the fruits of an advantage taken of a fiduciary relation whose dominant characteristic is the confidence reposed in one person by another. The law requires perfect good faith on the part of agents not only in form but in substance, and not only from agents receiving compensation, but also from gratuitous agents. Indeed, the rule is so familiar as to be trite that the obligation of an agent to his principal demands of him the strictest integrity and most faithful service.' Other requirements are set forth in the section containing the text from which we have quoted, suffice to say that the requirement of the law of the relation of agent and principal is to the effect that the agent cannot be allowed to profit at the expense of his principal, whether the result be reached by misrepresentation or concealment or other fraudulent device. This is further set forth in section 1709 of the Civil Code which reads: 'One who wilfully deceives another with intent to induce him to alter his position, to his injury or risk, is liable for any damage which he thereby suffers.' This is the definition of 'deceit', and section 1710 of the Civil Code, defining 'deceit' in subdivision 3, contains the following: 'The suppression of a fact by one who is bound to disclose it,' etc. We do not need to cite authorities to the effect that an agent is bound to disclose to his principal every fact within his knowledge which bears upon the value of the property with which the parties are dealing, and the concealment of which would lead to the injury of the principal. As stated in 1 California Jurisprudence, 799, section 85: 'Any act of an agent with respect to the subject matter of the agency, injurious to the principal, may be avoided by the principal as between themselves.' And as further said in the same section: 'An agent will not be allowed to deal in his own behalf with his principal with reference to the subject matter of the agency unless he

makes full, complete and honest disclosure of the truth of the transaction.' To the same effect is the case of *Curry* v. *King,* 6 Cal. App. 568 [92 Pac. 662, 665], where this court, speaking through Mr. Justice Hart, took occasion to set forth the law showing that an agent is absolutely prohibited from dealing with the subject matter of the agency by concealment or otherwise, so as to enrich himself. The case of *Curry* v. *King, supra,* also holds that the value of the property involved is immaterial. The unlawful profits obtained by the agent by reason of his fraudulent conduct, is all that is necessary to be ascertained.

"In *Rempel* v. *Kells,* 62 Cal. App. 81 [215 Pac. 1042], it is likewise held that the profits obtained by an agent through fraudulent conduct, constitutes the basis for recovery. This case also goes further and holds that an agent obtaining profits by fraudulent conduct and concealment from his principal, is not entitled to recover expenses incurred by him in connection with the property."

Defendants contend that they were not agents for plaintiff but were acting as middlemen in the transaction. The trial court found against this contention and the finding is supported by the evidence. In this connection it might be pertinent to inquire why they accepted $300 commission from plaintiff if they were not her agents.

Defendants urge that De Silva was agent of plaintiff and had knowledge of the transactions which would be charged to his principal. The trial court found that De Silva had no knowledge of the secret profit until July, 1932. This finding is supported by the testimony of De Silva.

Defendants maintain that as plaintiff received just what she bargained for she was not damaged and cannot complain. This contention is answered by the cases of *Calmon* v. *Sarraille,* 142 Cal. 638 [76 Pac. 486], *King* v. *Wise,* 43 Cal. 628, *Nightingale* v. *Williams,* 70 Cal. App. 424 [233 Pac. 807], and *Patterson* v. *De Haven,* 88 Cal. App. 418 [263 Pac. 568].

Defendants maintain that plaintiff had notice of the entire transaction through the escrow instructions and rely upon the case of *Early* v. *Owens,* 109 Cal. App. 489 [293 Pac. 136], to support them. Defendants can find no comfort in that case. There the trial judge found that the plaintiff had actual notice of all the details of the transac-

tion and that no fraud was practiced on her. In the instant case the contrary is true. In that case the trial court found that the plaintiff had constructive notice through the escrow instructions. In the instant case there were two separate files of escrow instructions. One was between plaintiff and Mr. and Mrs. Richey, which bore escrow number 244649, and was merely for the exchange of the two properties, without disclosing the matters concealed from plaintiff. The other bore escrow number 244650 and was between Mr. and Mrs. Richey, Tiney W. Griffith and Geo. L. Barney Co. It did disclose the details of the transaction and the secret profit of defendants. Plaintiff was not a party to this second escrow, had no knowledge of it, and cannot be charged with notice of any of its terms.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.