[Civ. No. 17965.   Second Dist., Div. Two.   Dec. 20, 1950.]

PHILIP HEIFETZ et al., Appellants, v. JOE BELL et al., Respondents.

Benjamin F. Kosdon and Daly B. Robnett for Appellants.

Franklin D. Laven for Respondents.

MOORE, P. J.—The judgment herein denied appellants relief in their action to recover for alleged fraud on the part of respondents arising out of appellants' purchase of a parking lot business owned by Bell and sold through his agents, his codefendants who comprised a real estate brokerage firm.

Bell had given an exclusive listing of the business to his codefendants with the provision that he must realize $1,000 net from the sale and that any amount received above that sum would belong to the brokers. Appellants purchased the business through the brokerage for $2,500 on the representation that the owner would not sell for less. After operating the lot without substantial profit for several months appellants sought to rescind the transaction and later instituted this suit, basing their action upon the theory of fraud arising from the last mentioned representation along with others in regard to the income and volume of business done by the establishment. The trial court found the representation that "the owner would not sell for less" was made to appellants, but concluded that no material false representation had been made and that appellants had not, in any case, relied upon respondents' statements in entering into the transaction.

The first contention is that actual fraud was found by the trial court by reason of its finding that defendant brokers had stated that Bell would not sell the business for less than $2,500 even though Bell had actually listed the property for $1,000. In support thereof appellants cite *Anderson* v. *George Barney Co.*, 1 Cal.App.2d 340 [36 P.2d 717] and *Thompson* v. *Stoakes*, 46 Cal.App.2d 285 [115 P.2d 830]. However, that such a statement was not a false representation is supported by the evidence. Inasmuch as the brokers had the exclusive right of sale and were privileged to set any figure above $1,000, their representation as to the price was nothing more or less than that the business could not be had for less. There is no evidence that the brokers were asked for any information relative to their commission. Consequently respondents were under no duty of disclosure. They dealt at arm's length. Nor is there any contention that there was any agency relationship between the brokers and the vendee. *Thompson* v. *Stoakes, supra,* was an action by a vendor of property to recover secret profits from brokers, acting as her agents in an exchange transaction. The decision in favor of the vendor was predicated specifically on the

agent's violation of duty of full disclosure under the fiduciary relationship present. *Anderson* v. *George Barney Co., supra,* was based upon the same theory. Both are distinguished from the facts here involved.

■ Appellants also urge that there is no evidence to support the finding that they did not purchase the business in reliance upon the alleged representations of respondents. That appellants are in error in making such contention they will observe when reminded of the evidence that they were experienced parking lot operators; that before making the purchase appellant Heifetz made an independent investigation of the neighborhood; viewed the lot in question; checked the number of vehicles parked there; noted its possible capacity, and also made computations as to the probable revenue from the business. In view of such evidence, the court was privileged to disbelieve appellant Heifetz' testimony that he relied on any representations of the respondents as to these factors. Indeed, it would be unreasonable to believe that men so experienced as were appellants in this field of business would pay heed while making such an investment to the self-serving declarations of the real estate broker. ■ It is a well settled rule that where a party relies on his own investigation and inspection of property, regardless of the vendor's representations, he cannot claim to have been misled by such statements. (*Carpenter* v. *Hamilton*, 18 Cal.App.2d 69, 71 [62 P.2d 1397]; *Smith* v. *Brown*, 59 Cal.App.2d 836, 838 [140 P.2d 86]; *Cameron* v. *Cameron*, 88 Cal.App.2d 585, 593 [199 P.2d 443]; *Gifford* v. *Roberts*, 81 Cal.App.2d 712, 718 [184 P.2d 942]; *King* v. *Miller*, 97 Cal.App.2d 702, 703 [218 P.2d 554].)

■ It is fervently contended that because the finding of nonreliance, and other findings contain negative pregnants they imply the truth of allegations they purport to controvert. While such findings are not to be approved as to their form a reversal on that account will not be ordered. The doctrine still obtains that findings are to be accorded a liberal construction with a view of supporting rather than defeating a judgment, and where it is plain that the intent was to find the material facts against appellant, the trial court's decision will not be set aside. (*Johndrow* v. *Thomas*, 31 Cal.2d 202, 208 [187 P.2d 681]; *McAuliffe* v. *McAuliffe*, 53 Cal.App. 352, 355 [199 P. 1071]; *Ballagh* v. *Williams*, 50 Cal.App.2d 10, 14 [122 P.2d 343].) It is clear from the findings as a whole and a

review of the entire record that it was intended to find adversely on each of appellants' allegations relative to any material fraudulent representations. If there be error present, it is not such as to have prejudiced appellants or resulted in a miscarriage of justice. Section 4½, article VI of the Constitution was enacted for the purpose of preventing reversals in just such situations as are presented here. Where the record indicates that a fair trial was had and the decision reasonably indicates the true findings and conclusions of the court and that the issues have been clearly cast and fairly determined, the judgment will not be upset.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.