[Civ. No. 27233. Second Dist., Div. Three. Nov. 17, 1964.]

LOUIS KITZMAN et al., Plaintiffs and Respondents, v. MARK NEWMAN et al., Defendants and Appellants.

Gold, Sturman & Gold and J. George Gold for Defendants and Appellants.

Jerome S. Monosson for Plaintiffs and Respondents.

FORD, J.—This is an appeal by the defendants from a judgment awarding damages to the plaintiffs. The defendants' building was on land adjoining that of the plaintiffs on Ventura Boulevard in the Encino section of the City of Los Angeles. The defendants extended their building across a sidewalk theretofore used by the public and thereby obstructed the view of the front of plaintiffs' building by persons proceeding along Ventura Boulevard in an easterly direction.

The defendants have elected to present their appeal on a settled statement pursuant to rule 7(a) of the California Rules of Court.

At the place where the two buildings are located, Ventura Boulevard runs in an easterly and westerly direction and is the principal business street in the community. The buildings are on the south side of the boulevard. The plaintiffs' property is to the east of that of the defendants. In the latter part of 1953 the defendants commenced the construction of their one-story building containing four stores. It was completed in January of 1954. As a part of the project, the defendants constructed a concrete sidewalk, which was 10 feet in width, across the entire front of their lot. This sidewalk was immediately adjacent to the front of their building. The space of 20 feet which separated the sidewalk from the paved surface of Ventura Boulevard was covered by the defendants with black asphalt paving and was thereafter used as a parking area for automobiles. Wooden blocks were installed to prevent vehicles from driving onto the concrete sidewalk. For a period of about six and one-half years, ending in June of 1960, pedestrian use was made of the sidewalk by some members of the general public proceeding along that side of Ventura Boulevard.

Shortly after the defendants' building was completed, the plaintiffs erected on their lot a one-story building containing four stores. They located the front of their structure on a line even with that of the front of the defendants' building. On the front of the plaintiffs' building were stone flowerboxes and the doors and windows of the four stores were in a recessed position about 2 feet to the rear of the front line of the building. The space between the plaintiffs' building and the curb of Ventura Boulevard was approximately 15 feet in width, and at the time the plaintiffs acquired their lot, it was subject to an expressly dedicated easement for sidewalk purposes over that entire space. The plaintiffs constructed a concrete pavement thereon for use as a sidewalk.

As has been indicated, the front building lines of the two

buildings were not parallel with the southerly curb line of Ventura Boulevard. The angle of the curb line, as it progressed westerly, was towards the north. Except for the strip of wooden blocks, there was no curb in place in front of the defendants' property.

The lot which adjoined the plaintiffs' property on the east was unimproved, but on the lots to the east of it were business buildings. When the defendants' building and that of the plaintiffs were built, the front building lines thereof conformed with those of the buildings to the east in the same block. Immediately adjacent to the defendants' property was the property of a church which extended to the end of the block on the west.

For many years prior to 1954 the public had established a sidewalk course in the block. It ran along the concrete sidewalk in front of the improved properties on the easterly portion of the block, over the vacant lot easterly of the plaintiffs' property and over the front of the plaintiffs' unimproved property. At this point some of the public would continue to walk across the defendants' property, turn north and walk along a walkway between the defendants' property and the church property, and then turn west and pass in front of the church property along a dirt path which ran in front of some benches. Some of the public, however, would not turn north to the pathway just described, but they would continue in a westerly direction over a pathway across the church property which passed in front of a brick wall. The same means of passage would be used by persons going in the opposite direction. After passing over the front of the plaintiffs' unimproved properties, others of the public would walk at various angles across the front of the defendants' property to reach the dirt pathway in front of the benches on the church property. The pathway in front of the benches was approximately 15 to 20 feet to the north of the original dirt sidewalk route over the respective lots of the plaintiffs and the defendants before the erection of the buildings thereon, but the pathway near the front brick wall on the church property was approximately even with the original dirt sidewalk route over the plaintiffs' and defendants' lots, both before and after the construction of their respective buildings.

After the construction of the Kitzman and Newman buildings in 1954 and the installation of the concrete pavement in front of each of the buildings, the public used approxi-

mately the same areas and direction for passing in front of the plaintiffs' building and that of the defendants. From 1954 to June of 1960, pedestrians walked over and along the concrete sidewalks in front of the two properties. Until June of 1960 there was a common sidewalk route from the intersection of the street to the east. It ran along and in front of various store properties, including those of the parties to this action, up to the westerly boundary of the defendants' property and then westerly over the church property.

A building permit dated November 29, 1959, was issued to the defendants by the Department of Building and Safety of the City of Los Angeles. The permit authorized them to remodel their original store building so as to change it into a two-story office building. It also permitted the construction of the front of the building on a line 10 feet to the north of the front of the existing building, with the result that a portion thereof would be on the entire area, 10 feet in width, previously allotted to the concrete sidewalk in front of the original building. The detailed plans for such extension of the front line of the building were approved as part of such permit as of January 7, 1960.

When the defendants acquired their lot, there were in existence no express dedications of easements over that property for sidewalk purposes. In December of 1959, the defendants granted to the City of Los Angeles an easement for street purposes on the remaining northerly 20 feet of their lot, this being the portion which had previously been covered with black asphalt paving and used for the parking of automobiles in front of the original building. The granting of such easement, however, was not a condition precedent to the granting of a permit by the city for the erection of the new structure.

Dr. Kitzman, one of the plaintiffs, was a veterinarian and conducted a small animal clinic in one of the stores in the plaintiffs' building. The three other stores were rented to tenants who maintained signs and window displays relating to their respective businesses.

When the defendants started their new building project, the plaintiffs immediately objected, both orally and by formal notice, to the elimination or obstruction of the sidewalk in front of the defendants' property. When the project continued, the plaintiffs filed the present action for an injunction and for damages.

With respect to the relationship of various lots in the block to the line of Ventura Boulevard, the settled statement

is in part as follows: "There is an uneven area for the boulevard itself and uneven and jagged lines representing the northerly boundary line of various properties along the southerly part of the boulevard. For instance, the church property to the west of Newman's [defendants'] property extends northerly up to the boulevard, some 30 feet from a line extending the originally established building line of Kitzman's [plaintiffs'] building and Newman's [defendants'] building. . . . The City of Los Angeles has future plans with respect to the development of Ventura Boulevard in that area. Such plans involve a sidewalk area northerly of the present front building line of Newman's [defendants'] new building running westerly over part of the church property and in front of the Acacia Life Insurance Building, (in the next block to the west), which building has now the same front set-back line as Newman's new building. This sidewalk would run easterly in front of Kitzman's [plaintiffs'] property and other property eastward slanting down, finally meeting the present sidewalk curb line. This would mean that there would be a ten foot strip of land in front of Kitzman's [plaintiffs'] existing building starting at a point approximately ten feet northerly on the westerly boundary of his property and decreasing easterly to a point five feet north of his present property line at the east boundary of his property, being made available for the enlargement and extension of his building northerly toward Ventura Boulevard and in such case his new building line would not be on a line with the building line of plaintiff's [sic] new building and with the larger Acacia Life Insurance Building to the west except at the northerly boundary of plaintiff's property. This new building line would start at a point on the west boundary of plaintiff's property approximately ten feet north of plaintiff's present frontage and would then follow a course generally southeasterly joining the present frontage of the vacant lot easterly of plaintiff's property on its easterly boundary and would cut across the easterly boundary of plaintiff's property at a point about five feet north of the present frontage of plaintiff's property."

The trial court found that, as to the area upon which the defendants constructed a sidewalk in front of their original building, it was the intention of the defendants to dedicate that strip of land to the public as an easement for street purposes; that use by the public of the sidewalk was not permissive; and that "the said easement was accepted by the public

by open, public and adverse use by the public with the knowledge of the Defendants'' for a period of approximately six and one-half years. The court further found that the building erected over that strip of land constituted a nuisance and that as a direct and proximate result of the defendants' acts, the plaintiffs' ''easement of light, air, ingress and egress and view to and from the street appurtenant to their property was destroyed and the fair market value of Plaintiffs' property was decreased by $5,500.00.''

In *Ex parte Taylor*, 87 Cal. 91, it was stated at page 94 [25 P. 258] : ''It is conceded here, and this court has held, that streets include sidewalks, as well as the roadway (*Bonnet* v. *San Francisco*, 65 Cal. 230 [3 P. 815]), and that the obstruction of a sidewalk is a public nuisance. (*Marini* v. *Graham*, 67 Cal. 130 [7 P. 442].)'' (See also *Bertolozzi* v. *Progressive Concrete Co.*, 95 Cal.App.2d 332, 335 [212 P.2d 910].)

The law of dedication[1] is applicable to the voluntary devotion of land by a private owner to the use of the public for sidewalk purposes. Thus, in *City of Laguna Beach* v. *Consolidated Mortg. Co.*, 68 Cal.App.2d 38 [155 P.2d 844], the court held that there had been a dedication to public use of a strip of land 14 feet wide running along the ocean front in the City of Laguna Beach. The strip was entirely covered by a wooden sidewalk or boardwalk which extended over 15 lots. The walk then in use had been constructed in 1925. The cost thereof was paid by contributions made by the several property owners. The use of the walk by the general public continued on an increasing scale from 1925 until the filing in 1942 of the action which was then before

---

[1]In *Diamond Match Co.* v. *Savercool*, 218 Cal. 665, at pages 668-669 [24 P.2d 783], the Supreme Court stated: ''To constitute a valid and complete dedication there must be an intention by the owner, clearly indicated by his words or acts, to dedicate the lands to public use [citation], and an acceptance either by public user or formal resolution. [Citation.] The intention to which courts give heed is an intention manifested by the owner's acts and finding expression in his conduct. [Citation.] It may be either express or implied, and is implied when the acts and conduct of the owner indicate clearly an intention to devote the land to the public use. [Citation.] The law will imply an intention to dedicate from long acquiescence in the use of land for highway purposes, for it is settled that the common-law rule as to the presumption of dedication by adverse user is applicable in this state. . . . Of course, where the dedication of a highway is sought to be established by user, it must be shown that the user was adverse, continuous and with the knowledge of the owner, for the required period of time. [Citation.] So far as the element of time is concerned, periods varying from five to forty years have been held sufficient. [Citations.]''

the court. Such use was made with full knowledge of the property owners and without any objection on their part. Many of the lot owners or their tenants had constructed or placed business structures and established businesses along the boardwalk.

In the *Laguna Beach* case, the court stated (68 Cal.App.2d, at pp. 44-45) : "In determining whether the use shown indicates an acceptance of an implied intention to dedicate to public use or whether it is merely permissive, the rules laid down and some of the broad statements made in the various decisions must be considered in the light of the facts in each case. Obviously, the surrounding circumstances affect the nature and extent of the rule which is to be applied in a particular case. Naturally, more evidence of an intent to dedicate to public use is required in an open country where the public has been in the habit of going at will, without any clearly defined roadways. Even in cities and towns different circumstances call for different rules. It should take stronger evidence to show an implied dedication where people have cut across a vacant lot as a matter of convenience, and the general circumstances indicate that neither the owner nor the public ever intended to establish a road there. On the other hand, a deliberate action on the part of all of the owners in a certain area for the purpose of bringing the general public into and through that area and providing them with a fixed route and permanent roadway is a different matter and naturally gives rise to presumptions which cannot be overlooked."

In the present case the defendants constructed the sidewalk in front of their building in such a manner that it constituted part of the route generally taken by the public in traveling by foot along Ventura Boulevard in the block in which the buildings of the plaintiffs and defendants were situated. In fact, the placing of asphalt on the part of the defendants' lot immediately adjoining the boulevard for the purpose of providing parking spaces for automobiles clearly indicated that the concrete walk was the area over which it was intended that pedestrians should travel. There was substantial evidence in support of the trial court's finding that the defendants made no objection to such use of the concrete strip and took no action to give notice to the public that such use was only permissive. That use continued without interruption for approximately six and one-half years.

While it is true that the record does not disclose that

the city ever undertook to repair or maintain the sidewalk, there is no evidence that work of that nature was ever necessary. The absence thereof did not preclude the conclusion that there was an implied dedication of the strip of land 10 feet in width for use as a public sidewalk. (*Sanal* v. *Meador,* 108 Cal.App.2d 820, 825-826 [239 P.2d 908].) ▮ Since there was substantial support in the record for the determination of the trial court that a public easement over the strip of land attached, this court is not free to interfere with that determination. (See *People* v. *Sayig,* 101 Cal.App.2d 890, 897 [226 P.2d 702].)

In *Klaber* v. *Lakenan,* 64 F.2d 86 [90 A.L.R. 783], injunctive relief was sought against the maintenance of a sidewalk canopy and signs in front of a theatre adjoining the plaintiff's property. The complaint was that the canopy and signs obstructed a view of the plaintiff's store building from the street. ▮ While it was held that the denial of the relief sought was warranted under the facts of that case, Circuit Judge Kenyon stated (64 F.2d at p. 91) : "The decided weight of authority as well as sound reason is in favor of the proposition that an abutting owner of property on a public highway has the easement, not only of light, air, and access, but of a reasonable view of his property from such public street." (See also *Northio Theatres Corp.* v. *226 Main Street Hotel Corp.,* 313 Ky. 329 [231 S.W.2d 65, 67] ; *Rogers* v. *Scaling* (Tex.Civ.App.) 298 S.W.2d 877, 880 ; *Kelbro, Inc.* v. *Myrick,* 113 Vt. 64 [30 A.2d 527, 530].) In the *Kelbro* case, the court stated (30 A.2d at p. 530) : "An important right of this nature is the abutter's right of view to and from the property, from and to the highway ; that is, his right to see and to be seen. This right of reasonable view has been generally recognized by the weight of authority and has been protected in numerous cases where encroachments on streets or sidewalks obscure the visibility of signs, window displays or show cases."

In *Williams* v. *Los Angeles Ry. Co.,* 150 Cal. 592 [89 P. 330], the obstruction of which the plaintiff complained had been erected on the sidewalk and was about nine feet from the walls and windows of the plaintiff's building. ▮ The Supreme Court stated (150 Cal., at pp. 594-595) : "Every lot fronting upon a street has, as appurtenances thereto, certain private easements in the street, in front of and adjacent to the lot, which easements are a part of the lot, and are private property as fully as the lot itself, though exercised in the

street and extending into and over the street. Any obstruction to the use of the street which impairs or destroys these easements is a private injury, special and peculiar to the owner of the lot, and different and distinct from the injury to the general public and from that which such owner suffers as a part of the general public. As one of the public he has the right to travel from place to place on the street, in front of his lot or elsewhere. Any injury to this public right gives him no right to maintain an action for damages, or for an injunction. ▇ As an abutting owner, he has the right to the private easements in question, and for an injury thereto he may sue for damages or to enjoin the continuance of the injury, regardless of the fact that the same obstruction also constitutes an injury to his public right of travel, and regardless of the number of persons who may suffer a similar injury to similar private easements appurtenant to other lots fronting on the street.

"These private easements are,—1. The right of ingress and egress to and from the lot over and by means of the adjacent portion of the street [citations] ; 2. The right to receive light from the space occupied by the street, and to the circulation of air therefrom [citations] ; and 3. The right to have the street space kept open so that signs or goods displayed in and upon the lot may be seen by the passersby, in order that they may be attracted as customers to patronize the business carried on thereon. [Citations.] The plaintiff, as the owner of the lot abutting on the street, was possessed of these private easements. The structure erected by the defendant was, at the place where it was situated, to some extent an obstruction to the exercise of all of these easements. To the extent of the space occupied, it absolutely excluded all other use, either for passage, light, air, or view." (See also *Goycoolea* v. *City of Los Angeles*, 207 Cal.App.2d 729, 735 [24 Cal.Rptr. 719].)

▇ The defendants assert that the public right of way for sidewalk purposes over their land was extinguished by the granting of the permit by the Department of Building and Safety of the City of Los Angeles for the extension of their building. Of a similar contention, Circuit Judge Kenyon stated in *Klaber* v. *Lakenan, supra,* 64 F.2d 86, at page 91: "The permission of a city council to erect an obstruction thereto is no defense where the rights of a property owner have been infringed. A city cannot consent that the owner of one lot may appropriate portions of the street in front of his neighbor's property, or so use the street in front of

his own property as to substantially injure his neighbor's property.'' No authority to vacate or abandon such an easement has been shown to have been vested in the Department of Building and Safety. In *Smith* v. *Kraintz,* 201 Cal.App.2d 696, a proceeding in mandamus, the court stated at page 700 [20 Cal.Rptr. 471]: ''. . . it cannot be thought proper for the court to command the granting of a permit to allow building on an easement held by the public.''

The defendants' argument with respect to ''a rule of law in regard to abandonment by relocation of an easement for road or highway purposes'' does not strengthen their position. The factual situation presented in this case does not show that there had been any actual relocation of the sidewalk, although a different sidewalk course appears to have been in contemplation by the city at the time of the trial. As has been noted, the granting by the defendants to the city of an easement for street purposes over the front 20 feet of their lot, being the portion theretofore paved by the defendants for parking purposes, was not a condition precedent to the issuance of the permit for the relocation of the front of the defendants' building.

The right of the plaintiffs to recover damages from the defendants remains for consideration. ■ ''The injury in so far as it affects the value of their property is a right peculiar to the owners and any interference with it constitutes a private as well as a public nuisance.'' (*Fitzgerald* v. *Smith,* 94 Cal.App. 480, 485 [271 P. 507].) ■ Where the damage to real property is permanent in nature, compensation is to be measured by the decrease in the market value of the property injured. (See *Spaulding* v. *Cameron,* 38 Cal.2d 265, 270 [239 P.2d 625]; *Guttinger* v. *Calaveras Cement Co.,* 105 Cal.App. 2d 382, 387 [233 P.2d 914].)

■ The defendants contend that the trial court used an improper basis in determining the issue of damages. They argue that the defendants' interference with the view of the plaintiffs' building by persons traveling in an easterly direction on Ventura Boulevard was one of temporary duration since the plaintiffs, as of the time of trial, had filed a petition with the city for the vacation of as much as 10 feet of the sidewalk easement across their property so that the front of their building could be extended. They assert in their brief that such an extension has been made since the trial. But this court must be guided by the record before it. That record shows that such an extension would not be in line with the front line of the defendants' building, although the two lines

would meet at the westerly border of the plaintiffs' property. From that juncture the front line of the plaintiffs' building could only slant away from the front of the defendants' building in such a manner that the plaintiffs would still be deprived of the formerly existing view of their building by persons proceeding in an easterly direction on Ventura Boulevard. Consequently, the damage suffered by the plaintiffs was of a permanent nature.

It is to be noted that the plaintiffs filed their action on July 26, 1960. Therein it was alleged that the defendants were constructing an extension of their building so that the front wall thereof would be 10 feet closer to the center of Ventura Boulevard. It was also alleged ''that said defendants have caused to be prepared the foundation upon which to erect said wall and unless restrained from so doing, intend to complete the construction thereof.'' A further allegation was that as a result of the defendants' action, ''plaintiffs have suffered great and substantial injury and will continue to suffer great and substantial injury, and damages have accrued and shall accrue to plaintiffs by reason of said action.'' Equitable relief by way of preliminary and permanent injunctions was sought, together with damages. A temporary restraining order was issued, which caused a cessation of construction for a short period of time, but a preliminary injunction was denied. Thereafter the defendants continued with the construction and completed their building prior to the trial. The trial court denied a permanent injunction but rendered a judgment for damages in favor of the plaintiffs.

At the time of the trial, the defendants' building extended across the space formerly occupied by the concrete sidewalk and bordered upon the easement for street purposes which had been granted by the defendants to the city by a deed dated December 8, 1959, which was accepted by the city several months prior to the obstruction of the sidewalk. It was in the light of that factual situation that the trial court had to determine the issues then before it. The governing law is stated in *Union Oil Co.* v. *Reconstruction Oil Co.,* 20 Cal. App.2d 170, at page 183 [66 P.2d 1215] : ''However, it is a familiar principle of equitable procedure that equity having once acquired jurisdiction of the subject matter of an action will retain it to the end that a complete adjudication of all conflicting rights may be had and a final determination of all matters in controversy may be accomplished. The damage suffered by respondent occurred after the suit for injunctive

relief had been filed and was a matter which grew out of the situation portrayed by the allegations of respondent's complaint. It was therefore purely incidental to the relief which respondent originally sought by its equitable action and a court of equity having properly acquired jurisdiction was justified in retaining it until all issues in the action should be determined. . . . However, it must be borne in mind that we are here considering an action in equity where the relief administered is such as the nature of the case and the facts as they exist at the termination of the suit demand.''

The trial court had before it photographs which clearly illustrated the nature of the effect upon the plaintiffs' property of the extension of the defendants' building over the sidewalk area.

Dr. Kitzman, one of the plaintiffs, testified that prior to the extension of the defendants' building, the signs and windows in his building were easily viewed by persons in automobiles and by pedestrians traveling along Ventura Boulevard in an easterly direction from a point as far as 800 or 900 feet westerly of his property. After the construction of the defendants' new building, such view of the plaintiffs' premises did not arise until a person reached a point approximately due north of the west wall of his building. With respect to his property, Dr. Kitzman also testified as to vacancies and reduced rentals. In his opinion, the fair market value of the plaintiffs' property immediately prior to the extension of the defendants' building was $75,000, but the fair market value immediately after such construction was $48,000.

A real estate appraiser testified that, in his opinion, the plaintiffs' property had a fair market value of $55,000 prior to the extension of the defendants' building and a fair market value of $36,000 thereafter. He expressed the further opinion that the cause of the decrease in value was the construction of the addition to the defendants' building which blocked the view from the west of the store signs and window displays on the plaintiffs' property.

The real estate agent who had been employed to obtain tenants for the plaintiffs' vacant stores testified that, in his opinion, the reason for the decrease in rental value was the loss of view of the tenants' stores, windows, displays and signs because of the defendants' new building. He stated that a person could not see the stores until he was ''right on top of them.''

The trial court determined the amount of damages suffered

by the plaintiffs because of the defendants' acts to be in the amount of $5,500.[2] ▇▇▇ The weight to be given to the evidence relating to the issue of damages and the inferences to be drawn therefrom were matters which were within the province of the trial judge as the trier of fact. (See *Gollaher* v. *Midwood Constr. Co.*, 194 Cal.App.2d 640, 650 [15 Cal. Rptr. 292].) A review of the evidence shows that the finding of the trial court on the issue of damages was amply justified. This court is not at liberty to interfere with that determination.

▇▇▇ The defendants contend that there are inconsistencies in the findings of fact. But no prejudice has been shown. Apropos is the statement found in *Heifetz* v. *Bell*, 101 Cal. App.2d 275, at pages 277-278 [225 P.2d 231] : ''The doctrine still obtains that findings are to be accorded a liberal construction with a view of supporting rather than defeating a judgment, and where it is plain that the intent was to find the material facts against appellant, the trial court's decision will not be set aside. (*Johndrow* v. *Thomas*, 31 Cal.2d 202, 208 [187 P.2d 681] ; *McAuliffe* v. *McAuliffe*, 53 Cal.App. 352, 355 [199 P. 1071] ; *Ballagh* v. *Williams*, 50 Cal.App.2d 10, 14 [122 P.2d 343].) It is clear from the findings as a whole and a review of the entire record that it was intended to find adversely on each of appellants' allegations . . . . If there be error present, it is not such as to have prejudiced appellants or resulted in a miscarriage of justice. Section 4½, article VI of the Constitution was enacted for the purpose of preventing reversals in just such situations as are presented here. Where the record indicates that a fair trial was had and the decision reasonably indicates the true findings and conclusions of the court and that the issues have been clearly cast and fairly determined, the judgment will not be upset.'' (See also *Richards* v. *Oliver*, 162 Cal.App.2d 548, 567 [328 P.2d 544].)

The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.

---

[2]In their opening brief the defendants state: ''In fact, the only damages claimed were those resulting from the loss of view.''